1  SEYFARTH SHAW LLP
   Jon D. Meer (State Bar No. 144389)
2  jmeer@seyfarth.com
   Timothy L. Hix (State Bar No. 184372)
3  thix@seyfarth.com
   Simon L. Yang (State Bar No. 260286)
4  syang@seyfarth.com
   2029 Century Park East, 35th Floor
5  Los Angeles, California 90067-3021
   Telephone:  (310) 277-7200
6  Facsimile:   (310) 201-5219

7  Attorneys for Defendants
   BP PRODUCTS NORTH AMERICA INC.; and
8  HUGO RODRIGUEZ

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

12  JOHN MUNIZ,                          )  CASE NO. CV11-4421 PA (JCGx)
                                         )
13           Plaintiff,                  )  NOTICE OF REMOVAL OF CIVIL
                                         )  ACTION TO UNITED STATES
14      vs.                              )  DISTRICT COURT (28 U.S.C.
                                         )  §§ 1331, 1332, 1441)
15  BP PRODUCTS NORTH AMERICA,           )
    INC., a corporation, HUGO            )  [Los Angeles County Superior Court
16  RODRIGUEZ, an individual, and        )  Case No. BC458966]
    DOES 1 THROUGH 100, inclusive        )
17                                       )  Complaint Filed:  April 6, 2011
             Defendants.                 )
18

19

20

21

22

23

24

25

26

27

28

FILED
CLERK, U.S. DISTRICT COURT
MAY 2 3 2011
CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF, JOHN MUNIZ, AND HIS ATTORNEYS OF RECORD:**

　　**PLEASE TAKE NOTICE** that Defendant BP Products North America Inc. ("BP") and Defendant Hugo Rodriguez ("Rodriguez") (collectively, "Defendants"), file this notice of removal pursuant to 28 U.S.C. sections 1331, 1332, and 1441(a) and (b), based on federal question and diversity of citizenship jurisdiction, in order to effect the removal of the above-captioned action from the Superior Court for the County of Los Angeles to the United States District Court for the Central District of California, and states that the removal is proper for the following reasons:

**I.     PLEADINGS, PROCESSES, AND ORDERS**

　　1.     On April 6, 2011, Plaintiff, John Muniz ("Plaintiff"), filed a Complaint for Damages in the Superior Court of California, County of Los Angeles, entitled "*John Muniz v. BP Products North America Inc., Hugo Rodriguez, and Does 1 through 100, inclusive*" (the "Complaint"), designated in as Los Angeles Superior Court Case No. BC458966 (the "State Court Action").

　　2.     The Complaint alleges seven purported causes of action as follow: (1) "Violation of California Labor Code § 1102.5;" (2) "Violation of California Business and Professions Code § 17200" ("the UCL"); (3) "Retaliation and Wrongful Termination in Violation of Public Policy;" (4) "Assault;" (5) "Intentional Infliction of Emotional Distress;" (6) "Violation of the Right to Seek Union Representation Counsel/Improper Discharge Due to Union Activity;" and (7) "Failure to Pay Wages."

　　3.     As discussed in greater detail below, Defendant BP is a citizen of Texas.  Plaintiff also names Hugo Rodriguez as a Defendant, but as discussed in further detail below, Rodriguez is a "sham" defendant, such that for purposes of diversity of citizenship jurisdiction, he can be disregarded.

1

4.     On or about April 22, 2011, Defendants first received notice of the State Court Action when Defendant BP was served with Plaintiff's Summons and Complaint, and accompanying documents.  True and correct copies of the (1) Summons, (2) Complaint, (3) Notice of Case Assignment, and (4) ADR Information Package that Plaintiff served on Defendant BP are collectively attached hereto as Exhibit "A."  True and correct copies of the Proof of Service on Defendant BP are attached hereto as Exhibit "B."

5.     On or about May 6, 2011, Defendant BP agreed to accept service on behalf of Defendant Rodriguez.  On May 17, 2011, Plaintiff mailed a Notice and Acknowledgement of Receipt to serve Defendant Rodriguez.  Defendant Rodriguez signed and acknowledged receipt on May 23, 2011.  A true and correct copy of the signed Notice and Acknowledgment of Receipt is attached hereto as Exhibit "C."

## II.     TIMELINESS OF REMOVAL

6.     This Notice of Removal is timely as it is filed within thirty (30) days of Defendant BP's receipt of the Summons and Complaint on April 22, 2011, and within one (1) year of the commencement of this action.  28 U.S.C. § 1446(b).

## III.     FEDERAL QUESTION JURISDICTION

7.     This action is one over which this Court has original jurisdiction under 28 U.S.C. section 1331 and may be removed by Defendant pursuant to 28 U.S.C. section 1441 in that it is a civil action over which the district courts have original jurisdiction founded on claims arising under the laws of the United States.

8.     Plaintiff alleges that he was retaliated against for asserting his rights for union representation.  (Compl., ¶ 116.)  Indeed, Plaintiff alleges he had been "seeking and obtaining union counsel."  (Compl., ¶ 117.)  Plaintiff was represented by a labor union, and the terms of his employment are governed by the applicable collective bargaining agreement ("CBA").  A true and correct copy of the CBA applicable to Plaintiff's employment is attached as Exhibit "D."  The CBA

1   expressly provides for the wages, hours of work, and working conditions of

2   employees such as Plaintiff.

3          9.     Based on Plaintiff's allegations, federal question jurisdiction arises

4   out of the fact that Plaintiff's claims are preempted by section 301 of the Labor

5   Management Relations Act, 29 U.S.C. section 185 ("Section 301").  Generally

6   speaking, Section 301 confers federal jurisdiction over "suits for violation of

7   contracts between an employer and a labor organization representing employees in

8   an industry affecting commerce."  29 U.S.C. § 185(a).  A collective-bargaining

9   agreement is such a contract, and Section 301 preempts all state-law claims

10  "founded directly on rights created by collective-bargaining agreements . . . ."

11  *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394 (1987).

12         10.    It is immaterial that Plaintiff avoided reference to the CBA in his

13  Complaint.  State-law claims arising under a CBA are preempted—regardless of

14  the pleading—if the claims actually depend on rights conferred by the CBA or

15  require interpretation of a CBA.  *See Williams*, 482 U.S. at 393-94 (explaining that

16  complete preemption occurs where the "pre-emptive force of a statute is so

17  'extraordinary' that it 'converts an ordinary state common law complaint into one

18  stating a federal claim for purposes of the well-pleaded complaint rule'" and that

19  "state claims founded directly on rights created by the collective bargaining

20  agreement" are completely preempted by federal law) (citations omitted).  *Accord*

21  *Audette v. Int'l Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1113

22  (9th Cir. 1999) (civil rights claim preempted where interpretation of agreement

23  was required in evaluating employer's defense that it had a legitimate non-business

24  reason for its actions); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997

25  (9th Cir. 1987) ("The district court . . . properly looked beyond the face of the

26  complaint to determine whether the contract claim was in fact a section 301 claim

27  for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal

28  jurisdiction."); *see also Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th

3

1    Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme

2    Court has found that Congress intended completely to replace state law with

3    federal law for purposes of federal jurisdiction.").

4         11.    As a result, Plaintiff's seventh cause of action for failure to pay wages

5    is preempted by Section 301.  Indeed, Plaintiff concedes that he already has

6    pursued claims via an internal union arbitration, presumably according to the terms

7    of the CBA.  (Compl., ¶ 32.)  Moreover, with respect to the seventh cause of

8    action, Plaintiff has only a *contractual* right as provided in the applicable CBA.

9    Therefore, Plaintiff's suit actually seeks to recover wages under the CBA, and such

10   claims are necessarily preempted by Section 301.  *See, e.g., Soremekun v. Thrifty*

11   *Payless, Inc.*, 509 F.3d 978 (9th Cir. 2007) (claim for failure to pay overtime in

12   accordance with collective bargaining agreement was preempted by Section 301).

13        12.    With respect to Plaintiff's non-wage causes of action for unfair

14   competition, retaliation and wrongful termination, assault, intentional infliction of

15   emotional distress, and violation of the right to seek union representation, the

16   claims rely in large part on alleged incidents involving workplace rules and

17   regulations, work schedules, and discipline.  Indeed, the CBA provides BP "the

18   exclusive right to take any action it considers appropriate in the management of its

19   business and the direction of its working forces, except as limited by specific

20   provisions of this [CBA]."  Here, Plaintiff's claims are work-related issues that are

21   inextricably intertwined with the rights and obligations of Plaintiff and Defendant

22   BP as provided for in the CBA.  For example, Plaintiff asserts that he was unfairly

23   terminated.  (Compl., ¶ 42.)  The discipline standards and procedures applied to

24   Plaintiff, however, require an analysis of Article XX of the CBA regarding

25   "Workplace Performance Development."  Moreover, any disputes regarding the

26   application of the terms of the CBA are to follow the grievance procedure in

27   Article XVI of the CBA.  There is no question that interpretation of the CBA is

28   required to resolve Plaintiff's claims, and, in fact, Plaintiff has already utilized the

4

grievance procedure to address identical issues raised by the third cause of action regarding wrongful termination.  Thus, resolution of even the non-wage claims can only be achieved by interpreting the rights and obligations established in the contract governed by the Labor Management Relations Act.  As such, Plaintiff's non-wage causes of action are preempted as well.

13.    Even if some of Plaintiff's claims were not preempted, this Court should exercise pendent jurisdiction over all claims.  All of Plaintiff's claims arise from the same "common nucleus of operative fact", as the factual allegations that support each cause of action are largely incorporated by reference to the facts set forth in the first cause of action.  As such, Plaintiff "would ordinarily be expected to try [all of his claims] in one judicial proceeding."  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

## IV.   DIVERSITY OF CITIZENSHIP JURISDICTION

14.    This action may be properly removed on the basis of diversity of citizenship jurisdiction, in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  28 U.S.C. §§ 1332(a)(1), 1441(a).

### A.    Plaintiff's Citizenship

15.    For diversity purposes, a person is a "citizen" of the state in which he is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A party's residence is *prima facie* evidence of his domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  Plaintiff has alleged that "[a]t all times mentioned herein, Plaintiff was, and now is, an individual residing in the County of Los Angeles, State of California."  (Compl., ¶ 1.) Plaintiff, therefore, is, and at all times since the commencement of this action has been, a citizen and resident of the State of California.

1

**B.   BP's Citizenship**

2    16.   BP is now, and was at the time of the filing of this action, a citizen of

3 a state other than California within the meaning of 28 U.S.C. Section 1332(c)(1).

4    17.   Pursuant to 28 U.S.C. Section 1332(c), "a corporation shall be deemed

5 to be a citizen of any State by which it has been incorporated and of the State

6 where it has its principal place of business."  The United States Supreme Court's

7 recent decision in *The Hertz Corp. v. Friend*, 559 U.S. __, 130 S.Ct. 1181 (2010),

8 has now clarified the meaning of Section 1332(c).  Specifically, the Supreme Court

9 held that a corporation's "principal place of business" for determining its

10 citizenship is the corporation's "nerve center":

11
> We conclude that "principal place of business" is best read as
12 > referring to the place where a corporation's officers direct, control,
> and coordinate the corporation's activities.  It is the place that Courts
13 > of Appeals have called the corporation's "nerve center."  **And in
> practice it should normally be the place where the corporation
14 > maintains its headquarters -- provided that the headquarters is
> the actual center of direction, control, and coordination, *i.e.*, the
> "nerve center"** ....
15

16 *The Hertz Corp.*, 130 S.Ct. at 1192 (emphasis added).

17    18.   BP is now, and was at all relevant times, incorporated under the laws

18 of the State of Delaware, and BP's headquarters are located at 501 Westlake Park

19 Boulevard, in Houston, Texas.  BP's officers work from its headquarters in

20 Houston, Texas, and direct, control, and coordinate BP's activities from the

21 headquarters in Houston, Texas.

22    19.   Therefore, BP is not a citizen of the State of California.  Rather, BP is

23 a citizen of the State of Texas pursuant to the Supreme Court's holding in *The*

24 *Hertz Corp.*, 130 S.Ct. at 1192.

25 **C.   Defendant Rodriguez's Citizenship**

26    20.   Defendant Rodriguez must be disregarded for purposes of diversity

27 because he is a sham defendant, *i.e.*, he cannot be found liable as a matter of law.

28 *See, e.g., Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001)

DEFENDANTS' NOTICE OF REMOVAL

1   (holding that removal based on diversity of citizenship was proper and that district

2   court "correctly ignored" joinder of a resident defendant after it was shown that

3   plaintiff "could not possibly prevail" on her claim against the resident defendant);

4   *Dodson v. Spillada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (finding

5   fraudulent joinder of non-diverse defendants where there was "no possibility that

6   [plaintiff] would be able to establish a cause of action against them").

7        21.    Although Plaintiff named Defendant Rodriguez, he is a sham

8   defendant because he has been fraudulently named.  *See Ritchey v. Upjohn Drug*

9   *Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("[F]raudulently joined defendants will

10   not defeat removal on diversity grounds."), *cert. denied*, 525 U.S. 963 (1998); *see*

11   *also McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("If the

12   plaintiff fails to state a cause of action against a resident defendant, and the failure

13   is obvious according to the settled rules of the state, the joinder of the resident

14   defendant is fraudulent."); *Lewis v. Time, Inc.*, 83 F.R.D. 455, 460 (E.D. Cal.

15   1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983) (a sham defendant is to be ignored for

16   purposes of removal).

17        22.    Joinder of a defendant is fraudulent if the defendant cannot be liable

18   to the plaintiff on any theory alleged in the complaint.  *Ritchey*, 139 F.3d at 1318

19   (quoting *McCabe*, 811 F.2d at 1339 ("If the plaintiff fails to state a cause of action

20   against a resident defendant, and the failure is obvious according to the settled

21   rules of the state, the joinder of the resident defendant is fraudulent.")).

22        23.    When determining whether a defendant is fraudulently joined, "[t]he

23   court may pierce the pleadings, consider the entire record, and determine the basis

24   of joinder by any means available."  *Lewis v. Time Inc.*, 83 F.R.D. at 455 ("[I]t is

25   well settled that upon allegations of fraudulent joinder . . . federal courts may look

26   beyond the pleadings to determine if the joinder . . . is a sham or fraudulent device

27   to prevent removal."); *McCabe*, 811 F.2d at 1339 (a defendant "is entitled to

28   present the facts showing the joinder to be fraudulent").

DEFENDANTS' NOTICE OF REMOVAL

24.     Defendant Rodriguez was fraudulently joined in the Complaint, despite the fact that Plaintiff has named him as a party to each of the causes of action.  The claims against the Defendant Rodriguez, however, are not viable for several reasons:  (1) the managerial privilege precludes individual liability for managers for tort claims arising from the course and scope of employment; (2) the exclusive remedies of the California Workers' Compensation Act preclude the intentional infliction of emotional distress claim; and (3) California Labor Code sections 1102.5 (disclosure of information to government or law enforcement), 923 (public policy as to labor organizations and collective bargaining), 1194 (recovery by employee of unpaid balance of full amount of minimum wage or overtime compensation), 201 (failure to pay wages upon termination), 203 (waiting-time penalties), 232 (prohibiting employee from disclosing wages), and 558 (civil penalties), as well as the UCL, do not permit civil claims against individual defendants.

**1.     Defendant Rodriguez Is A Sham Defendant As There Can Be No Individual Liability For Managers For Tort Claims Arising From The Course And Scope Of Employment**

25.     Plaintiff's third cause of action for retaliation and wrongful termination in violation of public policy, fourth cause of action for assault, and fifth cause of action for intentional infliction of emotional distress against Defendant Rodriguez fail as a matter of law because all of Defendant Rodriguez's alleged conduct occurred within the course and scope of employment and is thereby protected by the managerial privilege.

26.     Indeed, with respect to each of these tort causes of action (via incorporation by reference), Plaintiff alleges that he was an employee of BP.  (Compl., ¶ 6.)  Plaintiff further alleges that Defendant Rodriguez, "[a]t all times mentioned [within the Complaint], . . . was a Manager, Officer, Shareholder, Director, Supervisor, Manager, Managing Agent, [and] Owner" of BP.  (Compl., ¶ 3.)  Plaintiff again alleges Defendant Rodriguez was his "Supervisor," to whom

1  Plaintiff turned to in dealing with work-related issues.  (Compl., ¶ 18.)  Plaintiff

2  then concedes that "[t]he aforementioned acts of Defendants [including

3  Rodriguez], . . . were done by managerial agents."  (Compl., ¶ 50.)  Indeed,

4  Plaintiff alleges that Defendant Rodriguez had the authority to terminate Plaintiff's

5  employment.  (Compl., ¶ 29.)

6       27.    Specifically, with respect to the third cause of action for retaliation

7  and wrongful termination in violation of public policy, Plaintiff alleges that

8  Defendant Rodriguez retaliated against him "by refusing to pay him for hours he

9  worked."  (Compl., ¶ 26.)  Plaintiff then merely realleges that Defendant

10  Rodriguez terminated Plaintiff's employment and that such acts "were done by

11  managerial agents" of BP.  (Compl., ¶ 69.)

12       28.    With respect to the fourth cause of action for assault, Plaintiff alleges

13  that Defendant Rodriguez "began screaming obscenities" while pointing a finger

14  close to Plaintiff's face.  (Compl., ¶ 84.)  Plaintiff concedes that this conduct was

15  work-related, as he thereafter allegedly complained to BP and expected BP to

16  investigate.  (Compl., ¶ 88.)  Again, Plaintiff concedes that the acts "were done

17  directly by, or by managerial agents" of BP.  (Compl., ¶ 99.)

18       29.    With respect to the fifth cause of action for intentional infliction of

19  emotional distress, Plaintiff again reincorporates the allegation that Defendant

20  Rodriguez "began screaming obscenities."  (Compl., ¶ 84.)  Again, Plaintiff

21  concedes that (i) this conduct was work-related, as he thereafter allegedly

22  complained to BP and expected BP to investigate, (Compl., ¶ 88), and (ii) the

23  complained of acts "were done by managerial agents" of BP "and with the express

24  knowledge, consent, and ratification of managerial agents."  (Compl., ¶ 111.)

25       30.    As Plaintiff's allegations indicate, Defendant Rodriguez's conduct

26  that allegedly caused Plaintiff harm occurred within the course and scope of

27  employment.

28

DEFENDANTS' NOTICE OF REMOVAL

31.     Under the doctrine of managerial privilege, individual managers cannot be held personally liable for tort claims brought by other employees arising from actions taken within the course and scope of their managerial capacity. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (applying California law, Court held that plaintiff's tort claims against two individual managers failed as a matter of law because "**[the managers'] actions, according to the complaint, had been in their managerial capacity . . . [and] ratified by [their employer]. . . . [I]t is clear that 'if an agent is motivated in part by a desire to benefit his principle,' his conduct is, under California law, privileged**.") (citation omitted) (emphasis added). *Accord Sheppard v. Freeman*, 67 Cal. App. 4th 339, 346-47 (1998) ("Personnel actions are made for the benefit of the enterprise—the employer, and it is the employer, and not the individual employees, that must bear the risks and responsibilities attendant to these actions," and "an employee or former employee cannot sue individual employees based on their conduct, including acts or words relating to personnel actions."); *Aalgaard v. Merchants Nat'l Bank, Inc.*, 224 Cal. App. 3d 674, 684-86 (1990) (individual defendant employee's conduct was protected from liability by the manager's privilege), *cert. denied*, 502 U.S. 901 (1991); *Becket v. Welton Becket & Assocs.*, 39 Cal. App. 3d 815, 823-24 (1974) (claims against officer dismissed on managerial immunity grounds because the officer's acts occurred within course and scope of employment); *Marin v. Jacuzzi*, 224 Cal. App. 2d 549 (1964) (claims against another employee dismissed on managerial immunity grounds).

32.     Furthermore, there can be no individual liability for supervisors and managers arising from personnel actions, regardless of their personal motives. *Sheppard*, 67 Cal. App. 4th at 343 ("Disposition of this appeal turns on our resolution of . . . whether an employee or former employee can sue other co-employees individually based on their conduct relating to personnel actions, *e.g.*, termination, demotion, discipline, transfers, compensation setting, work

1   assignments, and/or performance appraisals.  We conclude that . . . such actions are

2   barred, whether or not the employers are determined to have been acting within

3   their scope of employment and regardless of their personal motives.").  Thus,

4   Plaintiff's allegation that the Individual Defendants "terminated Plaintiff's

5   employment . . . with the intention thereby of inflicting severe emotional distress

6   and injury upon Plaintiff," even if true, is not actionable.

7        33.    Based on the authorities cited above, Plaintiff cannot pursue his third,

8   fourth, or fifth causes of action against Defendant Rodriguez because the

9   allegations in the Complaint concede that Defendant Rodriguez was acting solely

10  within the scope and course of the his employment.  Thus, Defendant Rodriguez is

11  a sham defendant with respect to the third, fourth, and fifth causes of action.

12       **2.     Defendant Rodriguez Is a Sham Defendant Because**
            **Emotional Distress Claims In The Employment Context Are**
13          **Preempted By The Exclusive Remedies Of The California**
            **Workers' Compensation Act**
14

15       34.    Plaintiff's fifth cause of action for intentional infliction of emotional

16  distress fails as a matter of law for an additional reason—Plaintiff seeks recovery

17  for alleged emotional distress arising out of purported conduct that occurred

18  entirely within the course of his employment with BP.  As discussed above,

19  Plaintiff alleges that Defendant Rodriguez "began screaming obscenities."

20  (Compl., ¶ 84.)  Plaintiff, however, concedes that this conduct was work-related, as

21  he thereafter allegedly complained to BP and expected BP to investigate.  (Compl.,

22  ¶ 88.)  Plaintiff, however, concedes that the complained of acts "were done by

23  managerial agents" of BP "and with the express knowledge, consent, and

24  ratification of managerial agents." (Compl., ¶ 111.)  Thus, all of Defendant

25  Rodriguez's conduct that allegedly caused Plaintiff emotional distress occurred

26  within the course and scope of employment.

27       35.    The California Workers' Compensation Act provides that it is the

28  exclusive remedy for injuries "arising out of and in the course of employment."

California Labor Code section 3600(a).  *See also* California Labor Code section 3602(a) ("Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is . . . the sole and exclusive remedy of the employee or his or her dependents against the employer."); *Miklosy v. Regents of University of California*, 44 Cal. 4th 876, 902 (2008) (holding that an employee could not pursue claim for intentional infliction of emotional distress because "[t]he alleged wrongful conduct . . . occurred at the worksite, in the normal course of the employer-employee relationship, and therefore workers' compensation is plaintiffs' exclusive remedy for any injury that may have resulted"); *Livitsanos v. Sup. Ct.*, 2 Cal. 4th 744, 747 (1992) ("[C]laims for emotional distress are preempted by the exclusivity provisions of the workers' compensation law."); *Shoemaker v. Myers*, 52 Cal. 3d 1, 7 (1990) ("[D]isabling injuries, whether physical or mental, arising from termination of employment are generally within the coverage of workers' compensation and subject to the exclusive remedy provisions."); *Cole v. Fair Oaks Fire Protect. Dist.*, 43 Cal. 3d 148, 160 (1987) ("[A]n employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the [Workers' Compensation Act]."); *Mueller v. County of Los Angeles*, 176 Cal. App. 4th 809, 823-24 (2009) (holding that *Cole* and *Shoemaker* preclude a claim of intentional infliction of emotional distress in the employment context); *Robomatic, Inc. v. Vetco Offshore*, 225 Cal. App. 3d 270, 274 (1990) ("Since dismissal from employment inheres in the employment relationship, [plaintiff] is limited to recovery under Workers' Compensation.").

36.     Furthermore, Plaintiff's allegation that the conduct of Defendants, including Defendant Rodriguez, "was so extreme and outrageous as to exceed all bounds of that usually tolerated in civilized society" is still not actionable. (Compl., ¶ 102.)  The motive for the alleged conduct is irrelevant, as courts have held that recovery for emotional distress claims arising from personnel actions is limited to workers' compensation, *even when intentional harassing conduct is*

1  *alleged. See, e.g., Shoemaker*, 52 Cal. 3d at 15-16 ("The kinds of conduct at issue
2  (*e.g.*, discipline or criticism) are a normal part of the employment relationship.
3  Even if such conduct may be characterized as intentional, unfair or outrageous, it is
4  nevertheless covered by the workers' compensation exclusivity provisions.");
5  *Cole*, 43 Cal. 3d at 160 ("[A]n employee suffering emotional distress causing
6  disability may not avoid the exclusive remedy provisions of the [Workers'
7  Compensation Act] by characterizing the employer's decisions as manifestly
8  unfair, outrageous, harassment, or intended to cause emotional disturbance
9  resulting in disability."); *Jones v. Dep't of Corrs. and Rehabilitation*, 152 Cal.
10  App. 4th 1367 (2007) (holding that a claim of infliction of emotional distress based
11  on alleged discrimination and harassment was void because "[e]ven if the
12  discriminatory conduct [the plaintiff] complained about may be characterized as
13  intentional, unfair or outrageous, it is nevertheless covered by the workers'
14  compensation exclusivity provisions") (internal quotations and citations omitted);
15  *Horn v. Bradco Int'l, Ltd.*, 232 Cal. App. 3d 653, 665 (1991) ("injuries sustained
16  and arising out of the course of employment are governed by the exclusive remedy
17  provisions of workers' compensation, . . . even though the employer's conduct
18  might be characterized as egregious and ulteriorly motivated."); *Jenkins v. Family*
19  *Health Program*, 214 Cal. App. 3d 440, 450 (1989) ("[T]ermination is no less a
20  normal risk of employment because it is alleged to be wrongful . . . .  When an
21  employee claims injuries as a result of termination of his or her employment, those
22  injuries also necessarily occur in the course of employment.") (internal quotations
23  and citations omitted); *Pichon v. Pacific Gas & Elec. Co.*, 212 Cal. App. 3d 488,
24  496, *modified, reh'g denied*, 212 Cal. App. 3d 1369 (1989) (emotional distress
25  injuries caused by termination of employment are compensable under the Workers'
26  Compensation Act, and thus claims for intentional infliction of emotional distress
27  are preempted).
28

13

37.     Based on the authorities cited above, Plaintiff's cause of action for intentional infliction of emotional distress is preempted by the California Workers' Compensation Act because it is based entirely on conduct that occurred within the scope of the employment relationship.  Given that Plaintiff's claim for emotional distress is not viable, there can be no viable intentional infliction of emotional distress claim against Defendant Rodriguez.  Thus, Defendant Rodriguez is a sham defendant.

**3.     Defendant Rodriguez Is a Sham Defendant As Defendant Rodriguez Cannot Be Liable For Claims Arising From The Statutes Upon Which Plaintiff Bases His Lawsuit**

38.     According to Plaintiff, Defendant Rodriguez, "[a]t all times mentioned [within the Complaint], . . . was a Manager, Officer, Shareholder, Director, Supervisor, Manager, Managing Agent, [and] Owner" of BP.  (Compl., ¶ 3.)  Plaintiff does not allege that Defendant Rodriguez was the actual employer.

39.     Plaintiff's first cause of action for violation of California Labor Code section 1102.5, sixth cause of action for violation of California Labor Code section 923, and seventh cause of action for violation of California Labor Code sections 201, 203, 232, and 1194 against Defendant Rodriguez fail as a matter of law because Defendant Rodriguez was not Plaintiff's employer.

40.     Plaintiff's second cause of action for violation of the UCL fails as a matter of law because Plaintiff cannot recover restitution from Defendant Rodriguez.

41.     Plaintiff's seventh cause of action, to the extent it is based on California Labor Code section 558, against Defendant Rodriguez fails as a matter of law because the statute does not provide a private right of action.

**a.     Defendant Rodriguez Is a Sham Defendant Because There Can Be No Individual Liability Arising From Violations Of California Labor Code Section 1102.5**

42.     Plaintiff improperly names Defendant Rodriguez as a sham defendant to the first cause of action for violation of California Labor Code section 1102.5.

14

1    43.    To establish a *prima facie* case under Labor Code section 1102.5, a

2    plaintiff must show that (1) he engaged in protected activity, (2) **his employer**

3    subjected him to an adverse employment action, and (3) there is a causal link

4    between the two.  *See, e.g., Mokler v. County of Orange*, 157 Cal. App. 4th 121,

5    138 (2007) (emphasis added).  Indeed, courts have already established that

6    supervisory employees, such as Defendant Rodriguez, cannot be held liable for

7    claims under Labor Code section 1102.5.  *See, e.g., Cates v. Div. of Gambling and*

8    *Control*, 2007 WL 702229, at *9 (Cal. App. Mar. 8, 2007) ("[A] claim under

9    section 1102.5 can only be asserted against an employer, not supervisory

10   employees.").

11   44.    Because any claims against Defendant Rodriguez under Labor Code

12   section 1102.5 fail as a matter of law, Defendant Rodriguez is a sham defendant

13   with respect to Plaintiff's first cause of action.

14        **b.    Defendant Rodriguez Is a Sham Defendant Because**
          **There Can Be No Individual Liability Arising From**
15        **Violations Of California Labor Code Section 923**

16   45.    Plaintiff improperly names Defendant Rodriguez as a sham defendant

17   to the sixth cause of action for violation of the California Labor Code section 923.

18   46.    The title of Labor Code section 923 is "Declaration of public policy";

19   the statute does not provide the basis for a private right of action.  Cal. Lab. Code

20   § 923; *Gelini v. Tishgart*, 77 Cal. App. 4th 219, 224 (1999) ("No penalty, civil or

21   criminal, attaches for refusing to negotiate.").  The proper cause of action would be

22   a tort action based on this pronouncement of public policy, but Defendant

23   Rodriguez cannot be found liable on claims of retaliatory discharge that violate

24   public policy.  *See, e.g., Marshall v. Cargill, Inc.*, 2008 WL 2543210, at *3 (N.D.

25   Cal. Jun. 20, 2008) (explaining that individual liability is not supported for claims

26   of retaliatory discharge in violation of public policy).  Indeed, as discussed above,

27   Defendant Rodriguez cannot face tort liability for conduct that occurred entirely

28   within the course and scope of employment.  *See* Section IV.C.1, *supra.  Accord*

15

*McCabe*, 811 F.2d at 1339 (applying California law, Court held that plaintiff's tort claims against two individual managers failed as a matter of law because "**[the managers'] actions, according to the complaint, had been in their managerial capacity . . . [and] ratified by [their employer]. . . . [I]t is clear that 'if an agent is motivated in part by a desire to benefit his principle,' his conduct is, under California law, privileged**.") (citation omitted) (emphasis added); *Sheppard*, 67 Cal. App. 4th at 346-47 ("Personnel actions are made for the benefit of the enterprise—the employer, and it is the employer, and not the individual employees, that must bear the risks and responsibilities attendant to these actions," and "an employee or former employee cannot sue individual employees based on their conduct, including acts or words relating to personnel actions."); *Aalgaard*, 224 Cal. App. 3d at 684-86 (individual defendant employee's conduct was protected from liability by the manager's privilege); *Becket*, 39 Cal. App. 3d at 823-24 (claims against officer dismissed on managerial immunity grounds because the officer's acts occurred within course and scope of employment); *Marin*, 224 Cal. App. 2d at 549 (claims against another employee dismissed on managerial immunity grounds).

47.     Because Plaintiff's claim against Defendant Rodriguez under Labor Code section 923 fails as a matter of law, Defendant Rodriguez is a sham defendant with respect to Plaintiff's sixth cause of action.

### c.     Defendant Rodriguez Is a Sham Defendant Because There Can Be No Individual Liability Arising From Violations Of California Labor Code Sections 201, 203, 232, and 1194

48.     Plaintiff improperly names Defendant Rodriguez as a sham defendant to the seventh cause of action for violation of the California Labor Code sections 201, 203, 232, and 1194.

49.     Labor Code sections 201, 203, and 232 apply to "employers." Cal. Lab. Code § 201 ("If an **employer** . . .") (emphasis added); Cal. Lab. Code § 203

16

1   ("If an **employer** . . .") (emphasis added); Cal. Lab. Code § 232 ("No **employer**

2   may . . .") (emphasis added).  Moreover, regardless of the Labor Code section

3   Plaintiff asserts as the basis of his claim, "in the wage-and-hour context, the

4   California Supreme Court has narrowly construed the IWC definition of

5   'employer' and refrained from imposing individual liability on supervisors."

6   *Marshall v. Cargill, Inc.*, 2008 WL 2543210, at *3 (N.D. Cal. Jun. 20, 2008).

7   Indeed, the California Supreme Court has rejected individual liability for wage-

8   and-hour claims absent an allegation that the individual defendant misappropriated

9   the unpaid wages to their individual advantage.  *Reynolds v. Bement*, 36 Cal. 4th

10  1075, 1090 (2005) ("Nor has plaintiff alleged that the individual defendants here

11  misappropriated to themselves, as individuals for their individual advantage, the

12  unpaid wages he alleges his former employer owes him.  He alleges, rather, that

13  they 'caused the wages to be withheld by and in the accounts of the corporate

14  defendants for the Defendants' collective benefit.'  Under such circumstances,

15  California courts have declined to allow actions [against individual defendants] to

16  proceed.).

17        50.    Even Labor Code section 1194, whose plain language does not limit

18  its application only to employers, is construed as precluding individual liability.

19  *See Martinez v. Combs*, 49 Cal. 4th 35, 75 (2010) (considering Labor Code section

20  1194 and finding that wage-and-hour violations do not "impose liability on

21  individual corporate agents acting within the scope of their agency").

22        51.    Because Plaintiff's claim against Defendant Rodriguez under Labor

23  Code sections 201, 203, 232, and 1194 fail as a matter of law, Defendant

24  Rodriguez is a sham defendant with respect to Plaintiff's seventh cause of action.

25

26

27

28

DEFENDANTS' NOTICE OF REMOVAL

> **d.     Defendant Rodriguez Is a Sham Defendant Because California Labor Code Section 558 Does Not Provide Plaintiff A Private Right Of Action**

52.     Plaintiff improperly names Defendant Rodriguez as a sham defendant to the seventh cause of action for violation to the extent it relies on California Labor Code section 558.

53.     Unlike the other statutory bases to Plaintiff's seventh cause of action, California Labor Code section 558 contemplates the possibility of claims against individual defendants.  Cal. Lab. Code § 558 ("Any employer **or other person** acting on behalf of an employer . . .") (emphasis added).  But courts have already established that "**there is no private right of action under Cal. Lab. Code § 558.**"  *See, e.g., Ruiz v. Paladin Group, Inc.*, 2003 WL 22992077, at *1-2 (C.D. Cal. Sept. 29, 2003) (explaining that a claim for violation of Labor Code section 558 "is enforceable only by the Labor Commissioner"; "[T]he Legislature did not clearly and unmistakably give employees the right to sue under section 558.") (emphasis added).

54.     Because Plaintiff's claim against Defendant Rodriguez—regardless of whether proceeding under Labor Code sections 201, 203, 232, 558, and 1194— fails as a matter of law, Defendant Rodriguez is a sham defendant with respect to Plaintiff's seventh cause of action.

> **e.     Defendant Rodriguez Is a Sham Defendant Because There Can Be No Individual Liability Arising From Violations Of The UCL**

55.     Plaintiff improperly names Defendant Rodriguez as a sham defendant to the second cause of action for violation of the UCL.

56.     A plaintiff pursuing a claim under the UCL may not recover monetary damages but, instead, is limited to restitution and injunctive relief.  *Cortez v. Purolator Air Filtration Prods.*, 23 Cal. 4th 163, 173 (2000); *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 169 n.2 (1999).

18

1    57.    Here, Plaintiff does not seek injunctive relief.  (Compl, at 25-26

2    (Prayer for Relief).  Plaintiff also cannot seek restitution from Defendant

3    Rodriguez based on violations of the UCL.

4    58.    Restitution damages are designed only to return to the plaintiff that

5    which the defendants took.  *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 340 (1998)

6    ("[T]he notion of restoring something to a victim of unfair competition includes

7    two separate components.  The offending party must have obtained something to

8    which it was not entitled and the victim must have given something up which he or

9    she was entitled to keep."); *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1268

10   (1992) (in a claim for restitutionary relief, the "defendant is asked to return

11   something he wrongfully received; he is not asked to compensate the Plaintiffs for

12   injury suffered as a result of his conduct").  By pursuing this claim against

13   Defendant Rodriguez, Plaintiff does not seek the return of something that

14   Defendant Rodriguez wrongfully obtained from Plaintiff, and Plaintiff is not

15   seeking restitution from Defendant Rodriguez.  Indeed, courts have addressed "the

16   question of the availability under the UCL of restitution as a remedy against

17   corporate officers or agents when the plaintiff's property or labor has been

18   wrongfully appropriated by the corporation" and concluded that "an order

19   requiring [individual] defendants to pay the unpaid wages the [employer] owed to

20   its employees[] was not 'restitutionary as it would not replace any money or

21   property that [individual] defendants took directly from" the plaintiff.  *Bradstreet*

22   *v. Wong*, 161 Cal. App. 4th 1440, 1462-63 (2008).

23   59.    Because Plaintiff cannot recover any remedy from Defendant

24   Rodriguez, even if Plaintiff were to be successful on his claim for violation of the

25   UCL, Defendant Rodriguez is a sham defendant with respect to the second cause

26   of action.

27

28

### D.   Doe Defendants' Citizenship

60.   The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal.  28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

61.   Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the existence of Doe defendants one through fifty, inclusive, does not deprive this Court of jurisdiction.

## V.   AMOUNT IN CONTROVERSY

62.   While BP denies any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000.  *See Sanchez v. Monumental Life Ins.*, 95 F.3d 856, 862 (9th Cir. 1996) ("[D]efendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount.").  As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition).

63.   In determining whether a complaint meets the $75,000 threshold of 28 U.S.C. Section 1332(a), a court may consider the aggregate value of claims for compensatory and punitive damages, as well as attorneys' fees.  *See, e.g., Bell v. Preferred Life Ass. Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."); *Goldberg v. CPC Int'l,*

1   *Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) *cert. denied*, 459 U.S. 945 (1982)

2   (attorneys' fees may be taken into account to determine jurisdictional amount).

3        64.    The allegations in the Complaint make clear that Plaintiff believes that

4   the amount at issue is well in excess of $75,000.  Plaintiff alleges that he was

5   wrongfully terminated in retaliation for complaining about his supervisor's

6   behavior.  (Compl., ¶¶ 28, 29.)  He alleges that his termination caused him to lose

7   earnings and benefits.  (Compl., ¶ 44.)  He also alleges that Defendants' conduct

8   caused Plaintiff to incur "medical and related expenses," both those incurred

9   already and yet to have been incurred.  (Compl., ¶¶ 44, 46.)  He also alleges that

10  the manner of the termination caused him emotional distress and alleges that the

11  Complaint supports punitive damages.  (Compl., ¶ 48.)  He also alleges that he is

12  entitled to attorneys' fees and costs of suit.  (Compl., ¶ 51.)  He also alleges that his

13  damages are subject to "damage multipliers."  (Compl., ¶ 52.)

14       65.    Plaintiff's allegations of various forms of damages easily exceed

15  $75,000.  Plaintiff alleges that his wrongful termination caused him to "loss of

16  earnings and future earning capacity."  (Compl., ¶ 44.)  This lost of current and

17  future wages alone could easily amount to over $75,000.

18       66.    Plaintiff alleges that he is entitled to medical expenses, incurring

19  expenses for "medical care X-rays, and laboratory costs . . . and will in the future

20  be forced to incur additional expenses" and that "some of the said injuries are

21  reasonably certain to be permanent in character."  (Compl., ¶ 46.)  According to

22  Plaintiff's allegations, medical costs and expenses for the rest of his life alone

23  could easily amount to more than $75,000.

24       67.    Plaintiff alleges he is entitled to damages for the "emotional and

25  mental distress and anguish, humiliation, embarrassment, fright, shock, pain,

26  discomfort and anxiety."  (Compl., ¶ 48.)  These damages too could amount to

27  more than $75,000.

28

DEFENDANTS' NOTICE OF REMOVAL

1   68. Plaintiff alleges that he is entitled to attorneys' fees.  Attorneys' fees

2 from inception of this case through trial will easily be more than $75,000.

3   69. Additionally, Plaintiff alleges "punitive and exemplary damages."

4 (Compl., ¶ 50.)  The amount of punitive damages awarded is based on the financial

5 worth of the defendant, and is meant to punish the defendant in such a way that it

6 will have a tangible financial consequence.  Without conceding that punitive

7 damages are appropriate or applicable here, for a defendant of BP's net worth, it is

8 obvious that a punitive damages award, if assessed, would exceed $75,000.

9   70. Accordingly, since the amount in controversy exceeds $75,000, the

10 requirements for removal under 28 U.S.C. Sections 1332(a) and 1441(a) are

11 satisfied and this Court has original jurisdiction.

12 **VI. ALL NECESSARY PARTIES HAVE JOINED IN THIS REMOVAL**

13   71. As noted above, Defendants have been served with the Complaint, the

14 Summons, and other documents in this action.  All Defendants have joined in this

15 removal.

16   72. Though all Defendants have joined in this removal, only BP is an

17 appropriate defendant in this lawsuit because Defendant Rodriguez is merely a

18 sham defendant.  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193, n. 1 (9th Cir.

19 1988) (finding that fraudulently joined defendants are not required to join in a

20 petition for removal); *Farias v. Bexar County Bd. of Trustees for Mental Health*,

21 925 F.2d 866, 871 (5th Cir. 1991) (same).

22   73. The existence of Doe defendants 1 through 100, inclusive, does not

23 deprive this Court of jurisdiction.  *See* 28 U.S.C. § 1441(a) ("For purposes of

24 removal under this chapter, the citizenship of defendants sued under fictitious

25 names shall be disregarded."); *see also Fristos,* 615 F.2d at 1213 (unnamed

26 defendants are not required to join in a removal petition).

27   74. Thus, all necessary parties have joined in this removal.

28

DEFENDANTS' NOTICE OF REMOVAL

1  **VII.   VENUE**

2       75.    Plaintiff alleges that at all relevant times, "Plaintiff was, and now is,

3  an individual residing in the County of Los Angeles, State of California." (Compl.,

4  ¶ 5.)

5       76.    Plaintiff originally filed this action in the Superior Court of the State

6  of California, County of Los Angeles.  The County of Los Angeles lies within the

7  jurisdiction of the United States District Court, Central District of California.

8       77.    Therefore, without waiving BP's right to challenge, among other

9  things, personal jurisdiction and/or venue by way of a motion or otherwise, venue

10 lies in the Central District of this Court pursuant to 28 U.S.C. Sections 84(c),

11 1441(a), and 1446(a).  This Court is the United States District Court for the district

12 within which the State Court Action is pending.  Thus, venue lies in this Court

13 pursuant to 28 U.S.C. Section 1441(a).

14 **VIII.   SERVICE OF NOTICE OF REMOVAL ON STATE COURT**

15      78.    A true and correct copy of this Notice of Removal will be promptly

16 served on Plaintiff and filed with the Clerk of the Superior Court of the State of

17 California, County of Los Angeles, as required under 28 U.S.C. Section 1446(d).

18      79.    WHEREFORE, BP prays that this civil action be removed from the

19 Superior Court of the State of California, County of Los Angeles, to the United

20 States District Court for the Central District of California.

21

22 Dated: May 23, 2011          SEYFARTH SHAW LLP

23

24           By _____

25               Timothy L. Hix
              John D. Meer

26               Simon L. Yang
              Attorneys for Defendants

27               BP PRODUCTS NORTH AMERICA INC.; and
              HUGO RODRIGUEZ

28

DEFENDANTS' NOTICE OF REMOVAL

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             )   ss
COUNTY OF LOS ANGELES        )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Seyfarth Shaw LLP, 333 S. Hope Street, Suite 3900, Los Angeles, California 90071. On May 23, 2011, I served the within documents:

### NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT (28 U.S.C. §§ 1331, 1332, 1441)

☐ I sent such document from facsimile machine (213) 270-9601. I certify that said transmission was completed and that all pages were received and that a report was generated by facsimile machine (310) 201-5219 which confirms said transmission and receipt. I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at Los Angeles, California, addressed as set forth below.

☐ electronically by using the Court's ECF/CM System.

Adam Reisner, Esq.
Tessa King, Esq.
REISNER & KING LLP                          *Attorneys for Plaintiff*
14724 Ventura Blvd, Suite 510
Sherman Oaks, CA 91403
Telephone: (818) 981-0901
Facsimile: (818) 981-0902

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 23, 2011, at Los Angeles, California.

_____
Elsa J. Terre

13331593v.1

# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** BP PRODUCTS NORTH AMERICA, INC., a
*(AVISO AL DEMANDADO):* corporation, HUGO RODRIGUEZ, an individual, and
DOES 1 THROUGH 100, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:** JOHN MUNIZ
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

FOR COURT USE ONLY
CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 06 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
A. El LaFLEUR-CLAYTON

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Los Angeles
111 North Hill Street
Los Angeles, California 90012

CASE NUMBER:
*(Número del Caso):*
B C 458966

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Adam Reisner, Esq. (State Bar No. 204351) Reisner & King, LLP
14724 Ventura Blvd., Suite 510, Sherman Oaks, CA 91403                    (818) 981-0901

DATE:                     JOHN A. CLARKE, Clerk                AMBER LaFLEUR-CLAYTON          , Deputy
*(Fecha)*                 *(Secretario)*                                                        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

APR 06 2011

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
   BP PRODUCTS North America, INC.,
3. [✓] on behalf of *(specify):* A CORPORATION
   under: [✓] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
ProDoc

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 06 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
A. El LaFLEUR-CLAYTON

1 | ADAM REISNER, ESQ., (State Bar No. 204351)
2 | TESSA KING, ESQ., (State Bar No. 251408)
  | REISNER & KING LLP
3 | 14724 Ventura Blvd., Suite 510
  | Sherman Oaks, California 91403
4 | Phone: (818) 981-0901
  | Fax:   (818) 981-0902
5 |
6 | Attorneys for Plaintiff **JOHN MUNIZ**

7 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

8 | FOR THE COUNTY OF LOS ANGELES      B C 4 5 8 9 6 6

| | |
|---|---|
| 9  JOHN MUNIZ, | ) Case No.: |
| 10 | ) **COMPLAINT FOR DAMAGES** |
| 11        Plaintiff, | ) |
| | ) **(1) VIOLATION OF CA LABOR CODE** |
| 12     vs. | )     **§§1102.5 ET. SEQ. (Whistleblower);** |
| 13 | ) |
| | ) **(2) VIOLATION OF CA BUS. AND** |
| 14  BP PRODUCTS NORTH AMERICA, INC., a | )     **PROF. CODE §17200 ET. SEQ.** |
|     corporation, HUGO RODRIGUEZ, an | )     **(Unfair Business Practices);** |
| 15  individual, and DOES 1 THROUGH 100, | ) |
| 16  inclusive | ) **(3) RETALIATION AND WRONGFUL** |
| | )     **TERMINATION IN VIOLATION OF** |
| 17        Defendants. | )     **PUBLIC POLICY;** |
| 18 | ) |
| | ) **(4) ASSAULT;** |
| 19 | ) |
| | ) **(5) INTENTIONAL INFLICTION OF** |
| 20 | )     **EMOTIONAL DISTRESS;** |
| 21 | ) **(6) VIOLATION OF THE RIGHT TO** |
| | )     **SEEK UNION REPRESENTATION** |
| 22 | )     **AND UNION COUNSEL ;** |
| | )     **IMPROPER DISCHARGE DUE TO** |
| 23 | )     **UNION ACTIVITY CA** <u>**LABOR**</u> |
| | )     <u>**CODE**</u> **§ 923;** |
| 24 | ) |
| 25 | ) **(7) FAILURE TO PAY WAGES CA** |
| | )     <u>**LABOR CODE**</u> **§1194, §201, §203,** |
| 26 | )     **§232, §558;** |
| 27 | )        **JURY TRIAL DEMANDED** |

28

1

COMPLAINT FOR DAMAGES

COMES NOW Plaintiff JOHN MUNIZ (hereinafter referred to as "MUNIZ" or "PLAINTIFF") complains against the above-named Defendants and brings forth the following causes of action against the Defendants, and each of them, as follows:

I.

## FIRST CAUSE OF ACTION

### (Violation of California Labor Code § 1102.5 (Whistle-Blower Statute) against all Defendants and DOES 1-100, Inclusive)

1.     At all times mentioned herein, Plaintiff was, and now is, an individual residing in the County of Los Angeles, State of California.

2.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant herein, Defendant BP PRODUCTS NORTH AMERICA, INC., (hereinafter referred to collectively with all other Defendants as "Defendants" or individually as "BP,") were, and now are, valid businesses of form unknown duly organized and existing under the laws of the State of California, having its principal place of business in the County of Los Angeles, State of California.

3.     At all times mentioned herein, Defendant HUGO RODRIGUEZ (hereinafter referred to as "Rodriguez" and collectively with all other Defendants as "Defendants"), was, and now is, an individual residing in the County of Los Angeles, State of California, and was a Manager, Officer, Shareholder, Director, Supervisor, Manager, Managing Agent, Owner, Principal and Employee of Defendants, and each of them, and DOES 1-100.

4.     Plaintiff is ignorant of the true names and capacities, whether corporate, associate, individual or otherwise, of Defendants sued herein as DOES 1 - 100, inclusive, and therefore sues said Defendants by such fictitious names.

5.     Plaintiff will seek leave of court to amend this Complaint to assert the true names and capacities of the fictitiously named Defendants when the same have been ascertained. Plaintiff is

2

**COMPLAINT FOR DAMAGES**

informed and believes, and thereon alleges, that each Defendant designated as "DOES" herein is legally responsible for the events, happenings, acts, occurrences, indebtedness, damages and liabilities hereinafter alleged and caused injuries and damages proximately thereby to the plaintiff, as hereinafter alleged.

6.      Plaintiff was hired on February 12, 2001 by Defendants and worked as a transport driver up until the time of his wrongful termination on or about April 15, 2009.

7.      Plaintiff holds a commercial driver's license and is responsible for meeting all legal requirements established by the Department of Transportation for commercial drivers, including the requirements of California Vehicle Code §34501 through 34506.

8.      California Vehicle Code § 34501.2 (1) in relevant part states, "(1) The maximum driving time within a work period shall be 12 hours for a driver of a truck or truck tractor, except for a driver of a tank vehicle with a capacity of more than 500 gallons transporting flammable liquid, who shall not drive for more than 10 hours within a work period."

9.      California Vehicle Code § 34501.2 (2) also states, "A motor carrier shall not permit or require a driver to drive, nor shall any driver drive, for any period after having been on duty for 80 hours in any consecutive eight days."

10.     Therefore gasoline drivers, such as Plaintiff, are required by law to be off duty for ten hours before returning back to work and there is a maximum number of hours per week Plaintiff and other commercial drivers may drive. CA Vehicle Code § 34501.2.

11.     California Vehicle Code § 34501.3 in relevant part states, "No motor carrier shall schedule a run or permit or require the operation of any motor vehicle subject to this division between points within a period of time which would do either of the following:... (2) Require the driver of the vehicle to exceed the applicable maximum hours of service..."

3

**COMPLAINT FOR DAMAGES**

12.     As a result, Plaintiff and other commercial drivers must produce and complete a seven day logbook (either electronically or in written form) charting their hours and provide it to law officials upon request while driving as required under the Vehicle code.

13.     California Vehicle Code §34501.4 states, "Any driver subject to the hours of service limitations and logbook requirements of this division, who is unable to produce upon request of a representative of the department any driver's logbook or is only able to produce an incomplete driver's log book for the prior 24-hour period, is rebuttably presumed to be in violation of the hours of service limitations in Sections 34501 and 34501.2."

14.     Therefore, if a commercial driver, such as Plaintiff, is pulled over by law enforcement while driving and is unable to provide proof that he is within the statutory number of hours allowed by law to be driving, he can be arrested and charged with a misdemeanor. Cal. Veh. Code § 34506.

15.     California Vehicle Code §34506 specifically states in relevant part, "It is a misdemeanor to fail to comply with any rule or regulation adopted by the Department of the California Highway Patrol pursuant to Section 34501, 34501.5, 34508, or 34513 regarding any of the following: (a) Hours of service of drivers..."

16.     On or about Monday, March 30, 2009, Plaintiff reported for work as directed at approximately 3:30 a.m.

17.     When Plaintiff attempted to log in to his truck via the online computerized systems, he not able to as the system showed that he had more than ten hours within the 24 hour work period and/or on duty for 80 hours in any consecutive eight days. Therefore, the computer system would not let Plaintiff log in for driving.

18.     As a result, Plaintiff telephoned Supervisor and Defendant, Hugo Rodriguez, and informed him of the situation. Instead of coming in to rectify the situation, Rodriguez told

4

**COMPLAINT FOR DAMAGES**

26.     On or about April 6, 2009, Defendant Rodriguez continued to retaliate against Plaintiff for his refusal to violate the law and for protesting by refusing to pay him for hours he worked on March 30, 2009.

27.     When again Plaintiff protested this unlawful treatment and requested to speak to his union representative regarding the hours he worked but was told he would not be paid for, Defendant Rodriguez became enraged and began screaming at Plaintiff, putting him in immediate apprehension of harm.

28.     Defendant Rodriguez became even more enraged when Plaintiff told him that he would grieve the matter regarding his unpaid wages.

29.     Defendant Rodriguez then told Plaintiff he was terminated and demanded he leave the premises despite Defendants' policy that Human Resources be notified before any termination.

30.     Plaintiff began leaving the premises and again complained to Bob Grinder and BP who told him that they would "look into," the situation.

31.     Despite this, Defendants terminated Plaintiff's employment on April 15, 2009 via letter stating that his "employment with BP Productions North America Inc. is terminated effective today, April 15, 2009."

32.     Defendants have continued to retaliate against Plaintiff for his complaints after he won an internal union arbitration in or about December 2010, and was re-hired on or about January 2011, by receiving an unjust write-up on or about March 8, 2011.

33.     Defendants have also continued to retaliate against Plaintiff for his complaints by refusing to return him to his designated shift despite his seniority and also withholding seniority for his vacation time in or about January 2011-February 2011.

34.     California Labor Code §1102.5 provides that:

        (a) No employer shall make, adopt, or enforce any rule, regulation, or policy
            preventing an employee from disclosing information to a government or law

6

**COMPLAINT FOR DAMAGES**

enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or violation or noncompliance with a state or federal regulation.

    (b)  No employer shall retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or violation or noncompliance with a state or federal regulation.

    (c)  An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

35.    Plaintiff made numerous and repeated complaints to employees, managers, supervisors and managing agents of Defendants, and each of them, of (1) Defendants' request that he violate the law and drive without the proper documentation under California Vehicle Code §34501-34506; (2) failure to pay Plaintiff for hours worked under the California Labor Code; and (3) Defendants unfair business practices in violation of California Business and Professions Code §17200 et seq.

36.    Defendants violated California Labor Code §1102.5(a) and (c) as it made, adopted, and enforced rules, regulations, and policies preventing Plaintiff from disclosing information to government and law enforcement agencies, where Plaintiff had reasonable cause to believe his employer was violating the law.

37.    Indeed, under oath, Defendant Rodriguez admitted that if Plaintiff would have been pulled over without the paper log and had the computerized screen reflected that he was in violation of the maximum hours allowed, he would have been in violation of the law.

38.    Accordingly, Defendant terminated Plaintiff in order to prevent him from complaining to a government agency regarding Defendants statutory violations in violation of California Labor Code §1102.5 (b).

7

**COMPLAINT FOR DAMAGES**

39.     In retaliation for Plaintiff's disclosures to Defendants that they were violating the law and his refusal to participate in these violations, Defendants terminated Plaintiff in violation of California Labor Code § 1102.5.

40.     When Plaintiff was terminated, Plaintiff's complaints, and Defendants' inaction were motivating reasons and/or factors in Plaintiff's wrongful termination.

41.     Defendants, and each of them, retaliated against Plaintiff for complaining about the foregoing violations of State and/or Federal law to Defendants, and each of them, and wrongfully terminated Plaintiff on or about April 15, 2009, in violation of California Labor Code § 1102.5.

42.     When Plaintiff was wrongfully terminated, Plaintiff's complaints of violations of State and/or Federal law was a motivating factor and/or reason in Plaintiff's termination.

43.     By the acts herein alleged and in violation of California Labor Code § 1102.5, Defendants, and each of them made, adopted, and enforced rules, regulations, and policies preventing Plaintiff from disclosing information to government and law enforcement agencies, where Plaintiff had reasonable cause to believe that his employer, Defendants, were violating the California Vehicle Code, the California Labor Code, and California Business and Professions Code §17200 et seq.

44.     By the aforesaid acts and conduct of Defendants, and each of them, has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorney's fees, and other pecuniary loss not presently ascertained, for which plaintiff will seek leave of court to amend when ascertained.

45.     As a direct and legal result of the acts and omissions of Defendants, and each of them, Plaintiff was rendered sick, sore, lame, disabled and disordered, both internally and externally, and suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort and anxiety.  The exact nature and extent of said injuries are not known to the

8

**COMPLAINT FOR DAMAGES**

Plaintiff, who will pray leave of court to insert the same when they are ascertained.  Plaintiff does not at this time know the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some of the said injuries are reasonably certain to be permanent in character.

46.     As a further legal result of the acts and omissions of the Defendants, and each of them, Plaintiff has been forced to incur expenses for medical care, X-rays, and laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that Plaintiff will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown.  Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

47.     Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents Plaintiff has been unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that he will be incapacitated and unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained.  Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

48.     As a further direct and legal result of the acts and conduct of Defendants, as aforesaid, Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety.  The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

49.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this court.

50.     The aforementioned acts of Defendants, and each of them, were wilful, wanton, malicious, intentional, oppressive and despicable and were done in wilful and conscious

9

**COMPLAINT FOR DAMAGES**

1   disregard of the rights, welfare and safety of plaintiff, and were done by managerial agents and

2   employees of Defendants and DOES 1 through 100, and with the express knowledge, consent,

3   and ratification of managerial agents and employees of Defendants and DOES 1 through 100,

4   thereby justifying the awarding of punitive and exemplary damages in an amount to be

5   determined at the time of trial.

6   51.    As a result of the discriminatory acts of Defendants, and each of them, as alleged herein,

7   Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in

8   California Code Of Civil Procedure §1021.5 and California Business and Professions Code

9   §17200 et seq.

10  52.    As a result of the discriminatory acts of Defendants, and each of them, as alleged herein,

11  Plaintiff is entitled to damage multipliers as specifically provided in California Business and

12  Professions Code §17200 et seq.

13

14                                            II.

15                        SECOND CAUSE OF ACTION

16        (Violation Of California Business and Professions Code §17200

17                          (Unfair Business Practices)

18              Against all Defendants and DOES 1-100, Inclusive)

19  53.    Plaintiff incorporates herein by reference each and every preceding paragraph as though

20  duly set forth in full herein.

21  54.    California Business and Professions Code §17200 et seq. prohibits unfair business

22  practices by employers including, but not limited to, (1) Requiring that Plaintiff violate

23  California Vehicle Code § 34501-34506; (2) Failing to pay Plaintiff for hours worked in

24  violation of California Labor Code; (3) Retaliating against Plaintiff for seeking union

25  representation; and (4) Retaliating and Terminating employees for expected and/or actual

26  complaints of violations of State and/or Federal law.

27                                           10

28  _____

                        COMPLAINT FOR DAMAGES

55.    Plaintiff made numerous and repeated complaints of Defendants' Unfair Business Practices to employees, managers, supervisors and managing agents of Defendants, and each of them, of Defendants' failure and refusal to follow the law, requirement that Plaintiff violate the California Vehicle code, and Defendants' failure pay Plaintiff for hours worked.

56.    Defendants, and each of them, retaliated against Plaintiff for complaining about the Unfair Business Practices by Defendants, and each of them, and wrongfully terminated Plaintiff on or about April 15, 2009.

57.    When Plaintiff was wrongfully terminated, Plaintiff's complaints of Unfair Business Practices was a motivating factor and/or reason in Plaintiff's termination.

58.    By the aforesaid acts and conduct of Defendants, and each of them, has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorney's fees, and other pecuniary loss not presently ascertained, for which plaintiff will seek leave of court to amend when ascertained.

59.    As a direct and legal result of the acts and omissions of Defendants, and each of them, Plaintiff was rendered sick, sore, lame, disabled and disordered, both internally and externally, and suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort and anxiety.  The exact nature and extent of said injuries are not known to the plaintiff, who will pray leave of court to insert the same when they are ascertained.  Plaintiff does not at this time know the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some of the said injuries are reasonably certain to be permanent in character.

60.    As a further legal result of the acts and omissions of the Defendants, and each of them, Plaintiff has been forced to incur expenses for medical care, X-rays, and laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that

11

**COMPLAINT FOR DAMAGES**

Plaintiff will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

61.     Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents Plaintiff has been unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that he will be incapacitated and unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

62.     As a further direct and legal result of the acts and conduct of Defendants, as aforesaid, Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

63.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this court.

64.     The aforementioned acts of Defendants, and each of them, were wilful, wanton, malicious, intentional, oppressive and despicable and were done in wilful and conscious disregard of the rights, welfare and safety of plaintiff, and were done by managerial agents and employees of Defendants and DOES 1 through 100, and with the express knowledge, consent, and ratification of managerial agents and employees of Defendants and DOES 1 through 100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

65.     As a result of the discriminatory acts of Defendants, and each of them, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in

12

**COMPLAINT FOR DAMAGES**

California Code Of Civil Procedure § 1021.5 and California Business and Professions Code §17200 et seq.

66.     As a result of the discriminatory acts of Defendants, and each of them, as alleged herein, Plaintiff is entitled to multiple damages as specifically provided in California Business and Professions Code §17200 et seq.

## III.

## THIRD CAUSE OF ACTION

### (For Retaliation and Wrongful Termination in Violation of Public Policy Against All Defendants and DOES 1 -100, Inclusive)

67.     Plaintiff incorporates herein by reference each and every preceding paragraph as though duly set forth in full herein.

68.     Defendants wrongfully terminated Plaintiff's employment for the false and pretextual reason of "falsification of records and several incidents of insubordination" on April 15, 2009.

69.     As testified to by Defendant Rodriguez, he was involved in the decision to terminate Plaintiff.

70.     At all times herein mentioned, the public policy of the State of California, as codified, expressed and mandated in California Labor Code §1102.5, was to prohibit employers from discriminating against, retaliating against and terminating any individual on the grounds of their complaining of unlawful activity or refusing to commit an unlawful act, i.e. complaining of failure and refusal to grant rest periods and meal breaks in violation of California Labor Code §226 and 512 et seq. and Unfair Business Practices in violation of California Business and Professions Code §17200 et seq.

71.     At all times herein mentioned, the public policy of the State of California, as codified, expressed and mandated in California Labor Code §1194, 558, 232, 203 and 201 was to prohibit employers from failing to pay wages owed for work performed.

13

**COMPLAINT FOR DAMAGES**

72.     This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large.  Accordingly, the actions of Defendants, and each of them, in discriminating, harassing and retaliating and terminating Plaintiff on the grounds alleged and described herein were wrongful and in contravention and violation of the express public policy of the State of California, to wit, the policy set forth in California Labor Code §1102.5, et seq., the Ca. Vehicle Code §§ 34501.2 et seq., and the laws and regulations promulgated thereunder.

73.     This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large.  Accordingly, the actions of Defendants, and each of them, in discriminating, harassing and retaliating and terminating Plaintiff on the grounds alleged and described herein were wrongful and in contravention and violation of the express public policy of the State of California, to wit, the policy set forth in California Labor Code §§1102.5, et seq., the Ca. Labor Code §§923, et seq., Ca. Labor Code §§1194, §201, §203, and workplace safety in violation of Ca. Labor Code §§6310, and the laws and regulations promulgated thereunder.

74.     By the aforesaid acts and conduct of Defendants, and each of them, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorney's fees, and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

75.     As a direct and legal result of the acts and omissions of Defendants, and each of them, Plaintiff was rendered sick, sore, lame, disabled and disordered, both internally and externally, and suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort and anxiety.  The exact nature and extent of said injuries are not known to the

14

**COMPLAINT FOR DAMAGES**

plaintiff, who will pray leave of court to insert the same when they are ascertained. Plaintiff does not at this time know the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some of the said injuries are reasonably certain to be permanent in character.

76.    As a further legal result of the acts and omissions of the Defendants, and each of them, Plaintiff has been forced to incur expenses for medical care, X-rays, and laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that he will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

77.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents has been unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will be incapacitated and unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

78.    As a further direct and legal result of the acts and conduct of Defendants, as aforesaid, Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety. The exact nature and extent of said injuries is presently unknown to plaintiff, who will pray leave of court to assert the same when they are ascertained.

79.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this court. The aforementioned acts of Defendants, and each of them, were wilful, wanton, malicious, intentional, oppressive and despicable and were done in wilful and conscious disregard of the rights, welfare and safety of plaintiff, and were done by managerial agents and employees of

15

---

**COMPLAINT FOR DAMAGES**

1   Defendants and DOES 1 through 100, and with the express knowledge, consent, and ratification

2   of managerial agents and employees of Defendants and DOES 1 through 100, thereby justifying

3   the awarding of punitive and exemplary damages in an amount to be determined at the time of

4   trial.

5

6   80.   As a result of the discriminatory acts of Defendants, and each of them, as alleged

7   herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically

8   provided in California Code of Civil Procedure §1021.5.

9   81.   The aforementioned acts of Defendants, and each of them, were wilful, wanton,

10  malicious, intentional, oppressive and despicable and were done in wilful and conscious

11  disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and

12  employees of Defendants, and each of them, and DOES 1 through 100, and with the express

13  knowledge, consent, and ratification of managerial agents and employees of Defendants, and

14  each of them, and DOES 1 through 100, thereby justifying the awarding of punitive and

15  exemplary damages in an amount to be determined at the time of trial.

16  82.   As a result of the acts of Defendants, and each of them, as alleged herein, Plaintiff is

17  entitled to reasonable attorneys' fees and costs of said suit as specifically provided in California

18  Code of Civil Procedure §1021.5.

19                              IV.

20                  FOURTH CAUSE OF ACTION

21       (For Assault against All Defendants and DOES 1-100, Inclusive)

22  83.   Plaintiff incorporates by reference each and every preceding paragraph of this complaint

23  as though duly set forth below.

24  84.   On or about March 30, 2009, Defendant Rodriguez began screaming obscenities at

25  Plaintiff, standing in close proximity, and began pointing at Plaintiff only inches away from his

26  face.

27

28                              16

                    COMPLAINT FOR DAMAGES

85.    Defendant Rodriguez acted intending to cause harmful and/or offensive contact and his actions demonstrated that he was threatening to touch Plaintiff in a harmful and/or offensive manner.

86.    Despite Plaintiff's requests that he stop, Defendant Rodriguez's pointing and screaming only intensified.

87.    As a result, Plaintiff reasonably believed that he was about to be touched in a harmful and/or an offensive manner and it reasonably appeared to Plaintiff that Defendant Rodriguez was about to physically touch and/or harm Plaintiff.

88.    Plaintiff immediately complained to Defendant BP supervisors regarding Defendant Rodriguez's assault. Despite his complaints, Defendants failed to investigate or protect Plaintiff from harm or future assaults from Defendant Rodriguez.

89.    Again, on April 6, 2009, Defendant Rodriguez began screaming, cursing, and threatening Plaintiff while standing in very close proximity.

90.    Again, Defendant Rodriguez acted intending to cause harmful and/or offensive contact and his actions demonstrated that he was threatening to touch Plaintiff in a harmful and/or offensive manner.

91.    As a result of Defendants' behaviors as described above, Plaintiff was humiliated, put in apprehension, and his reasonable sense of personal dignity was offended. Defendants' behavior was a substantial factor in causing Plaintiff's harm.

92.    In doing the acts herein alleged, Defendants acted with the intent to cause an imminent apprehension of a harmful or offensive contact.

93.    Plaintiff did not consent to Defendants putting Plaintiff in apprehension of such contact.

94.    By the aforesaid acts and conduct of Defendants, and each of them, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, attorney's fees, and

17

**COMPLAINT FOR DAMAGES**

1   other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of Court to

2   amend when ascertained.

3   95.    As a direct and legal result of the acts and omissions of Defendants, and each of them,

4   Plaintiff suffered, shock, pain, discomfort and anxiety. The exact nature and extent of said

5   injuries are not known to the Plaintiff, who will pray leave of Court to insert the same when they

6   are ascertained. Plaintiff does not at this time know the exact duration or permanence of said

7   injuries, but is informed and believes, and thereon alleges, that some of the said injuries are

8   reasonably certain to be permanent in character.

9   96.    Prior to the occurrence of the incidents described above, Plaintiff was an able-bodied

10  individual, but since said incidents Plaintiff has been unable to engage fully in his occupation,

11  and is informed and believes, and thereon alleges, that Plaintiff will be incapacitated and unable

12  to perform his usual work for an indefinite period of time in the future, all to Plaintiff's damage

13  in an amount which is at present unascertained. Plaintiff will pray leave of Court to show the

14  total amount of loss of earnings at the time of trial.

15  97.    As a further direct and legal result of the acts and conduct of Defendants as aforesaid,

16  Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional

17  and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and

18  anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will

19  pray leave of Court to assert the same when they are ascertained.

20  98.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this

21  Court.

22  99.    The aforementioned acts of Defendants, and each of them, were wilful, wanton,

23  malicious, intentional, oppressive and despicable and were done in wilful and conscious

24  disregard of the rights, welfare and safety of Plaintiff, and were done directly by, or by

25  managerial agents of Defendants and DOES 1-100, or with the express knowledge, consent, and

26

27                                              18

28

---

COMPLAINT FOR DAMAGES

ratification of managerial employees of Defendants and DOES 1-100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

100.    As a result of the acts of Defendants, and each of them, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in California Code of Civil Procedure § 1021.5.

V.

**FIFTH CAUSE OF ACTION**

(For Intentional Infliction of Emotional Distress

**Against All Defendants and DOES 1-100, Inclusive)**

101.    Plaintiff incorporates herein by reference each and every preceding paragraph in this Complaint as though duly set forth in full herein.

102.    The conduct of Defendants, and each of them, was so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized society.

103.    Defendants, and each of them, intended to cause Plaintiff severe emotional distress.

104.    Plaintiff did not consent to Defendants' conduct, as herein alleged, and said conduct was unprivileged.  Defendants' conduct caused Plaintiff to suffer severe emotional distress.

105.    By the aforesaid acts and conduct of Defendants, and each of them, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorney's fees, and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of Court to amend when ascertained.

106.    As a direct and legal result of the acts and omissions of Defendants, and each of them, Plaintiff was rendered sick, sore, lame, disabled and disordered, both internally and externally, and suffered, among other things, numerous internal injuries, severe fright, shock, pain,

19

**COMPLAINT FOR DAMAGES**

discomfort and anxiety. The exact nature and extent of said injuries are not known to the Plaintiff, who will pray leave of court to insert the same when they are ascertained. Plaintiff does not at this time know the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some of the said injuries are reasonably certain to be permanent in character.

107.    As a further legal result of the acts and omissions of the Defendants, and each of them, Plaintiff has been forced to incur expenses for medical care, X-rays, and laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that he will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

108.    Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents has been unable to engage fully in his occupation, and is informed and believes, and thereon alleges, that Plaintiff will be incapacitated and unable to perform his usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

109.    As a further direct and legal result of the acts and conduct of Defendants, as aforesaid, Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

110.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this court.

20

**COMPLAINT FOR DAMAGES**

111.    The aforementioned acts of Defendants, and each of them, were willful, wanton, malicious, intentional, oppressive and despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendants, and each of them, and DOES 1 through 100, and with the express knowledge, consent, and ratification of managerial agents and employees of Defendants, and each of them, and DOES 1 through 100, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

112.    As a result of the discriminatory acts of Defendants, and each of them, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in California Code Of Civil Procedure §1021.5.

## VI.

## SIXTH CAUSE OF ACTION

### (For Violation of the Right to Seek Union Representation/Counsel; Improper Discharge Due to Union Activity

### [California Labor Code §923]

### Against All Defendants and DOES 1 Through 100, Inclusive)

113.    Plaintiff incorporates herein by reference each and every preceding paragraph in this Complaint as though duly set forth in full herein.

114.    Throughout Plaintiff's employment with Defendants, he was a union member of Teamsters Local 986.

115.    California Labor Code §923 declares the existence of a public policy premised on an employee's right to seek and designate union representation in dealing with their employer. California Labor Code §923 declares it necessary that Plaintiff, as an employee, have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from

21

## COMPLAINT FOR DAMAGES

the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives.

116.    Defendants, and each of them, wrongfully retaliated against Plaintiff for asserting his right for union representation to negotiate terms and conditions of his employment on his behalf, during an employment dispute.

117.    Defendants' retaliation was premised, at least in part, to Plaintiff seeking and obtaining union counsel, and/or his complaints about the unlawful conduct were motivating reasons and/or factors in Defendants' conduct.

118.    By the aforesaid acts and conduct of Defendants, and each of them, Plaintiff has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

119.    As a direct and legal result of the acts and omissions of Defendants, and each of them, Plaintiff was rendered sick, sore, lame, disabled and disordered, both internally and externally, and suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort and anxiety. The exact nature and extent of said injuries are not known to the plaintiff, who will pray leave of court to insert the same when they are ascertained. Plaintiff does not at this time know the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some of the said injuries are reasonably certain to be permanent in character.

120.    As a further legal result of the acts and omissions of the Defendants, and each of them, Plaintiff has been forced to incur expenses for medical care, X-rays, and laboratory costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that he will

**COMPLAINT FOR DAMAGES**

in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

121.   Prior to the occurrence of the incidents, Plaintiff was an able-bodied individual, but since said incidents has been unable to engage fully in Plaintiff's occupation, and is informed and believes, and thereon alleges, that Plaintiff will be incapacitated and unable to perform Plaintiff's usual work for an indefinite period of time in the future, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of court to show the total amount of loss of earnings at the time of trial.

122.   As a further direct and legal result of the acts and conduct of Defendants, as aforesaid, Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety.

123.   The exact nature and extent of said injuries is presently unknown to plaintiff, who will pray leave of court to assert the same when they are ascertained.

124.   Plaintiff has been generally damaged in an amount within the jurisdictional limits of this court.

125.   The aforementioned acts of Defendants, and each of them, were wilful, wanton, malicious, intentional, oppressive and despicable and were done in wilful and conscious disregard of the rights, welfare and safety of plaintiff, and were done by managerial agents and employees of Defendants and DOES 1 through 100, and with the express knowledge, consent, and ratification of managerial agents and employees of Defendants and DOES 1 through 100, thereby justifying the awarding ofptu1itive and exemplary damages in an amOtu1t to be determined at the time of trial.

23

**COMPLAINT FOR DAMAGES**

126.    As a result of the discriminatory acts of Defendants, and each of them, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in California Code of Civil Procedure §1021.5.

## VII.

## SEVENTH CAUSE OF ACTION

### (FAILURE TO PAY WAGES

[California Labor Code §1194, § 201, §203, §232, §558]

**Against All Defendants and DOES 1 Through 100, Inclusive)**

127.    Plaintiff incorporates herein by reference each and every preceding paragraph in this Complaint as though duly set forth in full herein.

128.    On or before or around March 30, 2009 and continuing, Defendants, and each of them, failed to pay Plaintiff for time worked.

129.    Plaintiff made numerous and repeated complaints to employees, managers, supervisors and managing agents of Defendants, and each of them, of the fact that Plaintiff was not being paid for hours worked in violation of Ca Labor Code §§1194, §201, §203 and that Defendant Rodriguez required that he take off hours on his time sheet for hours he did work.

130.    Said actions by Defendants, and each of them, were in violation of the Labor Code mandating and requiring that employers pay employees in accordance with all applicable orders of the Industrial Welfare Commission.

131.    Defendants, and each of them, retaliated against Plaintiff by continuing to deny Plaintiff wages for time worked, and wrongfully terminated Plaintiff on or about April 15, 2009.  When Plaintiff was terminated, Plaintiff's complaints of failure to pay wages was a motivating factor and/or reason in Plaintiff's termination in addition to Plaintiff discussing or disclosing his or her wages.

24

COMPLAINT FOR DAMAGES

132.    As a result of the aforesaid acts of Defendants, and each of them, Plaintiff was denied wages and benefits to which Plaintiff was entitled, all to Plaintiff's damage within the jurisdiction of this Court, subject to proof at the time of trial.  Plaintiff claims such amounts as damage, together with prejudgment interest as provided by law.

133.    As a result of the wrongful acts of Defendants, and each of them, as alleged herein, Plaintiff is entitled to damages, penalties and reasonable attorneys' fees and costs of said suit as specifically provided for, but not limited to, California Labor Code §§1194, 201, 203, 232 and 558.

WHEREFORE, Plaintiff JOHN MUNIZ, prays for judgment against the Defendants, and each of them, as follows:

1.      For general damages in an amount within the jurisdictional limits of this Court;

2.      For medical expenses and related items of expense, according to proof;

3.      For loss of earnings, according to proof;

4.      For loss of earning capacity, according to proof;

5.      For reasonable attorneys' fees and costs of said suit as specifically provided in California Code of Civil Procedure §1021.5, according to proof;

6.      For damages, penalties and reasonable attorneys' fees and costs of suit as provided for in California Labor Code §§1194, 201, 203 and 558.

7.      For reasonable attorneys' fees and costs of said suit as specifically provided in California Business and Professions Code §17200 et seq., according to proof;

8.      For multiple damages as specifically provided in California Business and Professions Code §17200 et seq., according to proof;

9.      For actual damages pursuant to California Labor Code §1105;

10.     For a civil penalty of $10,000 pursuant to California Labor Code §1102.5(f);

11.     For prejudgment interest according to proof;

25

**COMPLAINT FOR DAMAGES**

12.     For punitive and exemplary damages, according to proof;

13.     For costs of suit incurred herein; and

14.     For such other and further relief as the court may deem just and proper.

DATED:   April 6, 2011                              REISNER & KING LLP

                                        By: *Adam Reisner*
                                            ADAM REISNER, ESQ.
                                            Attorneys for Plaintiff
                                            JOHN MUNIZ

26

COMPLAINT FOR DAMAGES

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, *state Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Adam Reisner, Esq.                    SBN: 204351
Reisner & King, LLP                   e-mail: adam@reisnerlaw.com
14724 Ventura Blvd., Suite 510, Sherman Oaks, CA 91403
TELEPHONE NO.: (818) 981-0901   FAX NO.: (818) 981-0902
ATTORNEY FOR (Name): Plaintiff John Muniz

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: MUNIZ v. BP PRODUCTS NORTH AMERICA, INC., ET AL.

**CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court**

APR 06 2011

John A Clarke, Executive Officer/Clerk
By _____, Deputy
A.E. LaFLEUR-CLAYTON

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited     [ ] Limited (Amount (Amount demanded demanded is exceeds $25,000) $25,000 or less) | [ ] Counter   [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | B C 4 5 8 9 6 6  JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[X] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
         issues that will be time-consuming to resolve                in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence          f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[X] monetary   b.[ ] nonmonetary; declaratory or injunctive relief   c.[X] punitive
4. Number of causes of action *(specify):* Seven (7)
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 6, 2011
Adam Reisner, Esq.
_____          ► Adam Reisner
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CIVIL CASE COVER SHEET   ProDoc®
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) (*if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto*)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability (*not asbestos or
    toxic/environmental*) (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) (*not civil
    harassment*) (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract (*not unlawful detainer
        or wrongful eviction*)
    Contract/Warranty Breach–Seller
        Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage (*not provisionally
    complex*) (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent
    domain, landlord/tenant, or
    foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    (*arising from provisionally complex
    case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment (*non-
        domestic relations*)
    Sister State Judgment
    Administrative Agency Award
        (*not unpaid taxes*)
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
    above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-
        harassment*)
    Mechanics Lien
    Other Commercial Complaint
        Case (*non-tort/non-complex*)
    Other Civil Complaint
        (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition (*not specified
    above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE: | CASE NUMBER |
|---|---|
| MUNIZ v. BP PRODUCTS NORTH AMERICA, INC., ET AL. | BC458966 |

FOR COURT USE ONLY

**CONFORMED COPY
OF ORIGINAL FILED**
Los Angeles Superior Court

APR 06 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
A.E. LaFLEUR-CLAYTON

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☒ YES    CLASS ACTION? ☐ YES    LIMITED CASE? ☐ YES    TIME ESTIMATED FOR TRIAL 10 ☐ HOURS/ ☒ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check one Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|---|
| Auto Tort | Auto (22) | ☐ | A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ | A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ | A6070 Asbestos Property Damage | 2. |
| | | ☐ | A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ | A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ | A7210 Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ | A7240 Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ | A7250 Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☒ | A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ | A7270 Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ | A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |

LACIV 109 (Rev. 01/11)
LASC Draft 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| MUNIZ v. BP PRODUCTS NORTH AMERICA, INC., ET AL. | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☒ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation    Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: | CASE NUMBER |
|---|---|
| MUNIZ v. BP PRODUCTS NORTH AMERICA, INC., ET AL. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment<br>☒ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

LACIV 109 (Rev. 01/11)  
LASC Draft 03-04

**CIVIL CASE COVER SHEET ADDENDUM**  
**AND STATEMENT OF LOCATION**

LASC, rule 2.0  
Page 3 of 4

| SHORT TITLE: | CASE NUMBER |
| --- | --- |
| MUNIZ v. BP PRODUCTS NORTH AMERICA, INC., ET AL. | |

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3 on Page 1**, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br><br>☐1. ☐2. ☒3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>8601 S. Garfield Avenue |
| --- | --- |
| CITY:<br>South Gate | STATE:<br>CA | ZIP CODE:<br>90280 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the _____ Stanley Mosk _____ courthouse in the _____ Central _____ District of the Los Angeles Superior Court [Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)].

Dated: April 6, 2011 _____

*Adam Peisner*
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 (Rev. 01/07).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE

Case Number

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT  B C 4 5 8 9 6 6

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3©). There is additional information on the reverse side of this form

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirdre Hill | 49 | 509 |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. John P. Shook | 53 | 513 |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 |
| Hon. John A. Kronstadt | 30 | 400 | Hon. David L. Minning | 61 | 632 |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. Willliam F. Fahey | 78 | 730 |
| Hon. Michael C. Solner | 39 | 415 | Hon. Emilie H. Elias* | 324 | CCW |
| Hon. Michelle R. Rosenblatt | 40 | 414 | other | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | |

**\*Class Actions**

All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S.Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____      JOHN A. CLARKE, Executive Officer/Clerk

By_____, Deputy Clerk

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Seven Rules were effective January 1, 1994.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts.  These matters may be heard and resolved at this conference.  At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules.  Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at **www.lasuperiorcourt.org** (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (**Civil only**).

**What Is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

    **Cases for Which Mediation May Be Appropriate**
    Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

    **Cases for Which Mediation May Not Be Appropriate**
    Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

    **Cases for Which Arbitration May Be Appropriate**
    Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

    **Cases for Which Arbitration May Not Be Appropriate**
    If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

    **Cases for Which Neutral Evaluation May Be Appropriate**
    Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

    **Cases for Which Neutral Evaluation May Not Be Appropriate**
    Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

LAADR 005 (Rev. 05/09)
LASC Approved 10-03

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:

- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

FAMILY LAW (non-custody):

- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

PROBATE:

- **Mediation**
- **Settlement Conference**

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

**Party Select Panel**    The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

**Random Select Panel**    The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

**Private Neutral**    The market rate for private neutrals can range from $300-$1,000 per hour.

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

# EXHIBIT B



CORPORATION SERVICE COMPANY

# Notice of Service of Process

TVW / ALL
**Transmittal Number: 8668160**
**Date Processed: 04/23/2011**

| Primary Contact: | Tara Lindsey - WL1 16.121B<br>BP America Inc.<br>501 Westlake Park Boulevard<br>Houston, TX 77079 |
|---|---|
| Copy of transmittal only provided to: | Malika Herring<br>Melanie Johnson - WL1 16-121A |

| | |
|---|---|
| **Entity:** | BP Products North America Inc.<br>Entity ID Number  0501971 |
| **Entity Served:** | BP Products North America, Inc. |
| **Title of Action:** | John Muniz vs. BP Products North America, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Labor / Employment |
| **Court/Agency:** | Los Angeles County Superior Court, California |
| **Case/Reference No:** | BC458966 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 04/22/2011 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Adam Resiner<br>818-981-0901 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882  |  sop@cscinfo.com

# EXHIBIT C

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Adam Reisner, Esq. (State Bar No. 204351)<br>REISNER & KING, LLC<br>14724 Ventura Blvd. Suite 510<br>Sherman Oaks, CA 91403 | |

TELEPHONE NO.: 818-981-0901    FAX NO. *(Optional)*: 818-981-0902
E-MAIL ADDRESS *(Optional)*: adam@reisnerlaw.com
ATTORNEY FOR *(Name)*: Plaintiff John Muniz

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse - Central District

PLAINTIFF/PETITIONER: John Muniz

DEFENDANT/RESPONDENT: BP Products North America, Inc.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>BC458966 |
|---|---|

TO *(insert name of party being served)*: Hugo Rodriguez

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: May 17, 2011

Adam Reisner, Esq.
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify)*:

    Civil Cover Sheet
    Civil Cover Sheet Addendum
    Notice of Case Assignment; Notice of Case Management Conference
    Notice of LASC ADR Programs; Order to Show Cause Hearing

*(To be completed by recipient):*

Date this form is signed: May 23, 2011

Simon L. Yang, on behalf of Hugo Rodriguez
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Page 1 of 1
Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

# EXHIBIT D

**AGREEMENT**

THIS AGREEMENT, made and entered into as of March 1, 2009, by and between BP Products North America, Inc. hereinafter called "Employer", and, TEAMSTERS LOCAL 986, hereinafter called "Local 986."

WITNESSETH:

THAT, for and in consideration of the execution hereof and of the covenants and agreements herein contained, and in order to promote an increasing spirit of harmony between the Employer and the employees, and to ensure the efficient operation of the facility of the Employer, it is agreed as follows:

**ARTICLE I**

**EMPLOYEES COVERED**

A. The Employer recognizes Local 986 as the exclusive bargaining agent for the unit certified in National Labor Relations Board Cases Nos. 21-R-1858 and 21-R-3171, which said certifications include only the following employees in West Coast Fuels Value Chain, Transport Operations in Los Angeles and Orange Counties:

  1. Transport Drivers

B. The Employer recognizes Local 986 as the exclusive bargaining agent for the unit certified in National Labor Relations Board Case No. 21-R-3812 (as amended), which said certification include only the following employees in West Coast Fuels Value Chain, Transport Operations in San Bernardino County:

  1. Transport Drivers

C. Commission Distributors and their employees are not subject to the provisions of this Agreement.

**ARTICLE II**

**MANAGEMENT AND OPERATION OF BUSINESS**

The Employer shall have the exclusive right to take any action it considers appropriate in the management of its business and the direction of its working forces, except as limited by specific provisions of this Agreement.  All functions and prerogatives not expressly modified or restricted by specific provisions of this Agreement are vested exclusively in the Employer.   These functions and prerogatives shall include, but are not limited to, the right to assign duties to employees, the right to determine the size of the working forces, the right to establish work rules and the right to reprimand, suspend, discharge or otherwise discipline employees for cause.  The provisions of this section will not be used to deprive the Union or any employee of any rights specifically granted to it or them under any other provisions of this Agreement.

## ARTICLE III

### SENIORITY

A. Seniority of all employees covered by this Agreement on the date on which the Agreement becomes effective shall be the continuous service of the employees as set forth in the records of the Employer.  Employees entering the Employer's service subsequent to the date on which this Agreement becomes effective shall acquire seniority upon completion of sixty (60) days of accumulated service rendered during a period of not more than one hundred eighty (180) calendar days, where upon such seniority shall be deemed to have commenced as of fifty-nine (59) days prior to the date upon which it is completed.  During the first one hundred eighty (180) calendar days of employment, employees shall not be covered under Article XVI of this Agreement.

B. The following shall constitute a break in seniority:

 1. Resignation or discharge for any reason.

 2. Layoff of more than one (1) year.

 3. Failure to return to work upon recall after layoff or upon expiration of approved leave of absence, provided the employee has been given at least two (2) weeks' notice by registered mail.

C. When it is necessary for the Employer to reduce the number of employees, they shall be laid off according to the principle of seniority, that is to say, the employee who was last to be employed shall be the first to be laid off so long as remaining employees are qualified to perform remaining jobs, except that employees with less than one hundred eighty (180) calendar days of accumulated service may be laid off without regard to seniority.  If a staffing reduction requires an employee to transfer to another fleet location within the bargaining unit, the employee will transfer with his full bargaining unit seniority.

D. When increasing forces, former employees shall be restored to employment in order of their seniority, so long as they are qualified to perform available jobs, except that Employer shall not be required to reemploy any former employee whose seniority has been broken or who does not have at least one hundred eighty (180) calendar days of accumulated service.

E.

 1. Shifts shall be selected once each year from the master seniority list for the Los Angeles and Orange County employees, provided the employee is qualified.  Shifts will be made available at all fleet locations that the Company plans to operate within the Los Angeles and Orange County areas. Shifts will take effect on the first Monday subsequent to January 1st.

 2. Shifts shall be selected once each year from the terminal seniority list for the San Bernardino County employees, provided the employee is qualified.  Shifts will be made available at all fleet locations that the Company plans to operate within the San Bernardino County area.  Shifts will take effect on the first Monday subsequent to January 1st.

3.   Vacation shall be selected once each year from the master seniority list for the Los Angeles and Orange County employees, provided the employee is eligible. Vacations will be bid independently for each location selected above after shift bid selection has been completed.

4.   Vacation shall be selected once each year from the terminal seniority list for the San Bernardino County employees, provided the employee is eligible.  Vacation will be bid independently after bid selection has been completed.

F.   Employer shall furnish Local 986, upon request, a complete seniority list by Terminal of all employees under this Agreement.

G.   When the Employer fills a vacancy of a permanent assignment, notice of the vacancy shall be posted at each Terminal covered by this Agreement for five (5) days.  The vacancy will be filled by the senior qualified bidder at the Terminal of the vacancy.  The employer will consider requests for transfer from one Terminal to another as vacancies occur and permit such transfers, awarding the position to the most senior bidder.

H.   An employee transferred temporarily to a classification outside the bargaining unit shall continue to accumulate seniority for up to one hundred eighty (180) days.  If the employee does not return to the unit in one hundred eighty (180) days, he will lose his bargaining unit seniority.  In cases where the transfer from the bargaining unit is for reasons of sickness or disability, the above one hundred eighty (180) day limitation shall not apply.

I.   Floater shifts may be established on a terminal by terminal basis.  The employer has the right to establish up to two (2) floater shifts at each terminal.  The principle will be observed of giving assignment preference to senior employees except when it is impractical or unreasonable to do so.


## ARTICLE IV

### HOURS OF WORK AND OVERTIME

A.   The workweek shall be any seven (7) consecutive days adopted by Employer for its operations, generally.   The normal working schedules shall consist of four (4) consecutive ten (10) hour days.   However, the Company may establish working schedules of four (4) ten (10) hour days, not necessarily consecutive.

B.   Regular daily and weekly work schedules shall be posted and maintained; however, work outside the regular schedules will be paid at the overtime rate.  If an employee's established regular schedule is changed without forty (40) hours of advance notice, all of the new schedule hours which are outside of the old schedule hours will be paid at the overtime rate until forty (40) hours have passed from the time the employee was notified of the change in schedule.

C.   Overtime at the rate of one and one-half (1 1/2) times the regular rate of pay shall be paid for all time worked under the following conditions:

3

1.   In excess of ten (10) hours in any one day to those who are scheduled to work ten (10) hours per day.
2.   In excess of forty (40) hours of straight time in any one workweek.
3.   If the overtime schedule cannot be filled by volunteers, the inverse order of seniority will be used to fill the schedule.  Employees required to work will receive minimum 10 hours overtime pay.
4.   All employees called and reporting voluntarily for duty or required to attend a Company meeting on a non-scheduled work day shall receive overtime pay for all hours worked with a minimum equivalent of five (5) hours straight time.

There shall be no pyramiding of overtime and/or other premium payments.  It is understood and agreed that for all hours worked in excess of ten (10) hours in any one day or days, within a particular workweek, that result in the total hours worked being in excess of forty (40) hours in said workweek, overtime shall be paid in accordance with condition No. 2 above.

D.   Overtime shall be distributed as equitably as practicable among qualified employees in each job classification at each Terminal.  The Employer shall post weekly the amount of overtime each employee has worked during the most recent week, and a cumulative total for the quarter.

E.   If an employee is scheduled to work overtime and manpower requirements change within a 24 hour period, where they are no longer required to work, they will receive two (2) hours of straight-time pay.

F.   If an employee signs up and is scheduled for voluntary overtime and then calls off with less than forty eight (48) hours notice of the scheduled shift start time, the employee will have 10 (ten) unpaid hours added to his eligible overtime hours calculation.

G.   The Company will post the weekly work schedule no later than Wednesday of the week proceeding the scheduled week.

H.   If an employee is inadvertently passed for overtime, the passed employee shall receive 5 hours of straight time pay.

## **ARTICLE V**

## **WAGE RATES AND CLASSIFICATIONS**

A.   Classifications included in this Agreement and the wage rates applicable thereto are contained in Appendix "A" attached to and made a part of this Agreement by reference.

B.   All employees shall be hired at not less than the minimum of the wage schedules shown in Appendix "A".  Employees who enter the classification of Transport Driver with previous driving experience of a similar nature may be started at an hourly wage rate above the minimum to give recognition to such previous experience.

4

C.   In the event the Employer creates a new job classification and wage rate to cover a new job in this bargaining unit, he will notify the Union and the Union may request immediate negotiation of the wage rate.  The wage rate applicable to such classification shall be the subject of negotiations and shall not be subject to the "Grievances and Arbitration" procedure established in the Agreement.

D.   Night Shift Wage Differentials

A night shift wage differential of one dollar ($1.00) per hour will be paid to employees whose shift starts between 12:00pm (noon) and 12:00am (midnight).  The differential will be paid for the entire shift.

## ARTICLE VI

### MEAL ALLOWANCE

A.   Employees are required to start their meal period before their sixth (6th) hour of work begins.

B.   After ten (10) consecutive hours of work for employees regularly scheduled for eight (8) hours of work per day or after twelve (12) consecutive hours of work for employees regularly scheduled for ten (10) hours of work per day, an employee will be entitled to a meal expense allowance of:

$6.25

and after each elapsed consecutive four (4) hours of work subsequent to the first twelve (12), he will be entitled to a meal expense allowance of:

$4.50

## ARTICLE VII

### SHOE ALLOWANCE

The Company will reimburse the employee for up to $125 per year for approved footwear providing the employee submits an original receipt.  Employee may roll two (2) years worth of funds to purchase up to $250.00 worth of footwear.

## ARTICLE VIII

### HOLIDAYS

The holidays regularly observed are New Year's, the third Monday in February, Easter Sunday, the last Monday in May, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, Christmas Day and the employee's birthday.  With two (2) week notice and subject to management approval, employees may elect not work on their birthday. Each employee who works on his regularly scheduled workday prior to and subsequent to a specified holiday and is excused from work on the holiday will be

5

entitled to ten (10) hours pay at the regular straight-time rate as holiday consideration whether said holiday occurs on a scheduled workday or day off. If an employee is required to work on any part of a holiday, the payment for a non worked holiday shall not be applicable and he shall be paid a day's normal pay at the regular straight-time rate, plus one and one-half ( 1 ½) times the regular straight-time rate for all hours worked on the holiday.

# ARTICLE IX

## VACATIONS

After completing one (1) year of accumulated service, employees actively engaged in the service of the Employer shall be entitled to two (2) weeks' vacation each year. After completing an additional four (4) years of continuous service, subsequent to the completion of the first year of accumulated service, employees actively engaged in the service of the Employer shall be entitled to three (3) weeks' vacation each year. After ten (10) years of continuous service, employees actively engaged in the service of the Employers shall be entitled to four (4) weeks' vacation each year. After twenty (20) years of continuous service, employees actively engaged in the service of the Employer shall be entitled to five (5) weeks' vacation each year. After thirty (30) years of continuous service, employees actively engaged in the service of the Employer shall be entitled to six (6) weeks vacation each year.

Accumulated service with the Employer means service not interrupted by a layoff for any one period of more than one hundred eighty (180) calendar days or by resignation. It includes absences for which the employee is paid by Employer, and absences resulting from industrial injuries covered by compensation insurance, but does not include any other absences, if any holiday is observed by Employer during the vacation of an employee, he shall be granted an additional day of vacation.

Such vacations shall be granted in accordance with vacation plans, rules and regulations of the Employer. The Company will use the following guidelines for vacation week selection.

1.  All twelve (12) months will be open for vacation selection.

2.  Employees may schedule one (1) week of vacation in individual days.

3.  If a previously selected vacation week(s) becomes available, as determined by management, after January 1st through out the calendar year, the Company will post for five (5) days such vacancy(s). The Company will fill vacation week(s) by senior most qualified bidder.

# ARTICLE X

## A. INDUSTRIAL DISABILITY

All employees shall receive an industrial disability allowance for time lost on any regularly scheduled workday because of sickness or injury due to an industrial disability, subject to the following provisions:

1. The provisions of this plan will apply to all permanent full-time employees upon the completion of six months of employment. An individual is not eligible for benefits of this plan while absent without pay and may become eligible for such benefits only after he has returned to work.

2. An employee necessarily absent from work because of sickness or injury due to an industrial disability will receive Full Pay for the first 26 weeks of such absence commencing with the first day thereof, and Half Pay for the next 26 weeks of such absence for each industrial disability.

3. An employee will qualify for a new industrial disability allowance at the commencement of each separate case of industrial disability. At the completion of each such disability case, the unused portion of the employee's allowance will be canceled.

4. When an employee qualifies for industrial disability benefits under Federal or State Statutes, rules or regulations, the combined benefits payable from such source and from this Plan will be adjusted so that they will not exceed his regular base pay. In the event that an employee's absence due to his disability extends beyond the benefit allowance period, he shall receive only those Federal and/or State benefits for which he is eligible, during the excess period.

5. An employee who qualifies for benefits under this Plan will receive disability pay based on his permanent base pay in effect at the time his disability begins, in accordance with the schedule set forth in paragraph A (2). Permanent base pay will exclude all extra pay such as overtime, shift differential, premiums, or other allowances.

6. An employee absent from work due to an industrial disability will be required to provide satisfactory proof of his disability and his return to active employment will be subject to the terms of Article III of this agreement. The Employer reserves the right as a condition of continued payment of the Plan to have a medical examination of the employee made and the treatment checked by a physician of its own selection, to be paid for by the Employer.

7. An employee shall not be entitled to an industrial disability allowance when sickness or injury is due to employee's willful intention to injure himself or another, venereal diseases, intoxication, the use of drugs or arises out of work for another employer.

8. An industrial disability allowance granted under the Plan will cease upon the termination of employment for any reason, including death or retirement.

## B. NON-INDUSTRIAL DISABILITY

All employees shall receive a non-industrial disability allowance for time lost on any regularly scheduled workday because of sickness or injury due to a non industrial disability, subject to the US Fuels-Logistics Driver Short Term Disability Plan.

1. The provisions of this plan will apply to all permanent full-time employees upon first day of employment. An individual is not eligible for benefits of this plan while absent without pay and may become eligible for such benefits only after he has returned to work.

2.   STD Benefit Schedule:

| Years of Credited Service | STD Benefit Schedule | |
|---|---|---|
| | 100% of Base Pay | 50% of Base Pay |
| First day of hire but less than 6 | 6 weeks | 6 weeks |
| At least 6 but less than 7 | 7 weeks | 7 weeks |
| 7 but less than 8 | 8 weeks | 8 weeks |
| 8 but less than 9 | 9 weeks | 9 weeks |
| 9 but less than 10 | 10 weeks | 10 weeks |
| 10 but less than 11 | 12 weeks | 10 weeks |
| 11 or more | 14 weeks | 12 weeks |

Once STD benefits have been exhausted, the employee must cross into a new calendar year *and* have returned to active duty for at least three months without an absence for a health condition to be eligible for a new set of benefits.

3.   When an employee qualifies for non-industrial disability benefits under Federal or State Statutes, rules or regulations, the combined benefits payable from such source and from this Plan will be adjusted so that they will not exceed his regular base pay. In the event that an employee's absence due to his disability extends beyond the benefit allowance period, he shall receive only those Federal and/or State benefits for which he is eligible, during the excess period.

4.   An employee who qualifies for benefits under this Plan will receive disability pay based on his permanent base pay in effect at the time his disability begins, in accordance with the schedule set forth in the **US Fuels-Logistics Driver Short Term Disability Plan**. Permanent base pay will exclude all extra pay such as overtime, shift differential, premiums, or other allowance.

5.   An employee may be required to support his claim for a non-industrial disability allowance with proper medical evidence. The Employer reserves the right, as a condition of continued payments hereunder, to have an examination made and the treatment checked by a physician of its own selection, to be paid for by Employer. Employees on STD will be paid regular STD benefits when the company requires a visit to the company doctor. If the doctor's appointment is on a non-scheduled work day, the employee will receive five (5) hours of straight time call-out pay.

6.   An employee shall not be entitled to a non-industrial disability allowance when sickness or injury is due to employee's willful intention to injury himself or another, venereal disease, intoxication, the use of drugs or arises out of work for another employer.

7.   A non-industrial disability allowance granted under this Plan will cease upon the termination of employment for any reason, including death or retirement.

8.   Non-industrial disability hours shall not be counted towards hours worked.

## ARTICLE XI

### JURY DUTY AND SERVICE AS WITNESS

For periods during which an employee is required to be absent from his job for jury service or to appear as a witness by court subpoena, the employee's basic wages will be maintained according to the Employer's regulations.  If an employee is selected for a trial the company will adjust the employee's shift to accommodate the court schedule.  The employee will be required to provide proof of service from the court.

## ARTICLE XII

### LEAVES OF ABSENCE

After completion of one (1) year of continuous service, an employee may, on proper application and approval by the Employer, be granted a leave of absence without pay for a reasonable period of time, without losing seniority, provided he does not engage in any occupation for pay except for the Union.

After completion of one (1) year of continuous service an employee may, on proper application and approval by the employer, by granted up to one hundred twenty (120) calendar days Leave of Absence without pay to resolve suspension of license.

## ARTICLE XIII

### DEATH IN FAMILY

In the event of the death of a member of an employee's immediate family (parents, spouse, children, brothers, sisters, grandparents, grandchildren, parents-in-law, brothers-in-law, sisters-in-law, sons-in-law, daughters-in-law, registered domestic partner or any other close relative who has been a regular member of the employee's household), the employee shall be allowed pay for necessary time off to a maximum of four (4) regularly scheduled workdays, provided the employee attends the funeral.  Management reserves the right to request documentation to verify eligibility.   In special circumstances an employee may request two (2) additional days of unpaid funeral leave or may elect to take emergency vacation.

## ARTICLE XIV

### BENEFITS

No employee covered by this Agreement who is receiving any benefit, condition or higher rate of pay than the rate contained herein shall suffer any reduction in pay or loss of benefit or condition because of the application of this Agreement.

Participation in the BP Plans listed below, either as now in existence or as changed in the future, which are extended generally to employees in this Area shall be extended to employees covered by this Agreement in accordance with the provisions of such Plan, and

the Union agrees to accept such present or subsequent Plans on behalf of employees covered by this Agreement:

BP Medical Program (including prescription drugs and Vision, if any)
BP Dental Plan
BP Employee Savings Plan
BP Basic Life Insurance Plan
BP Retirement Plan
BP Group Universal Life Insurance Plan
BP Long Term Disability Plan
BP Occupational Accidental Death Benefit

## ARTICLE XV

**UNION ACTIVITIES**

Union Officials:
Non-employee authorized agents of the Union shall have access to the Company's facility for the sole purpose of administering the Agreement with the employer.  Such meetings will require twenty four (24) hour prior notice and approval by Fleet Management.  Such agents shall comply with all Company safety and security procedures.  In no event shall the Union agents engage in activities which interfere in any way with the efficient, safe and proper functioning of the terminal activities.  Non-employee authorized agents of the Union may not solicit or distribute Union materials on the Company's property.

The Business Agent or qualified representative of the Local Union or Shop Steward so designated by the Local Union shall be allowed to talk with employees for the purpose of ascertaining whether or not this Agreement is being observed by the parties hereto, or to assist in adjusting grievances.  In the event the Business Agent or qualified representative of the Local Union wishes to interview an employee privately, he shall be permitted to do so. These privileges shall be exercised so that no time is lost to the Employer with prior notice and approval from Fleet Management.

Stewards:
A Steward may be provided for each shift.  Such Steward is to be designated by Local Union or selected by employees on the job.  Grievances which may arise and which cannot be adjusted on the job shall be reported to the Local Union by the Steward at no time lost to the employer.  However, in no event shall the Steward order any changes and no changes shall be made except with consent of the Employer and Local Union.

With two (2) weeks prior notice and approval by fleet management, Stewards will be allowed unpaid time off to attend to Union business.  Alternatively, a Steward may request, that management adjust his work schedule to accommodate Union business.

## ARTICLE XVI

## GRIEVANCES AND ARBITRATION

1.      Definition of Grievances: Disputes between the parties which arise during the term of this Agreement and which refer specifically to the application of the terms of any of the Articles of this Agreement shall be defined as a grievance.

Step 1      The employee and Supervisor shall discuss the grievance to attempt resolution. It is the option of the grievant to request the Shop Steward to be present during these discussions to help resolve the grievance.

Step 2      If the grievance is not resolved at Step 1, it must be filed in writing with the Employer within fourteen (14) calendar days of the event(s) giving rise to the grievance, and unless so filed, the right to process the grievance shall be considered thereafter waived.

Step 3      The parties shall exercise every amicable measure to informally settle, adjust or withdraw written grievances filed in accordance with Step 2 above. If grievance(s) are not resolved informally, Management and the Union shall have thirty (30) consecutive calendar days following the filing of a written grievance to reach a settlement.

Arbitration

If the parties are unable to reach agreement in Step 3 above, the Union must notify the Company in writing of its intent to submit the particular grievance to arbitration unless said notification is completed, the particular grievance shall be considered automatically withdrawn. Notices of intent to arbitrate must be filed within sixty (60) consecutive calendar days of the event(s) giving rise to the grievance and only after the previous steps in this procedure have been complied with, and unless so filed, the right to arbitrate this particular grievance shall be considered thereafter waived. If the grievance is not settled by the foregoing procedure, then either the Union or Employer shall have the right to request arbitration in the matter by referring it to the Board of Arbitration to consist of one (1) representative of the Union and one (1) representative of Employer. The conditions and claims surrounding such differences shall be submitted in writing by each party. In the event that the two (2) members of the Board fail to agree, they shall select a third member. The findings and decision of said Board of Arbitration shall be final and conclusive as to the question submitted to such Board for decision. Two (2) arbitrators must sign the award in order that it be considered the decision of said Board. The Board of Arbitration shall have twenty (20) days, not including Saturdays, Sundays and legal holidays, to reach and render its decision.

Arbitration hearings must be scheduled within three hundred and sixty five (365) calendar days from the date of the third step of the grievance process or the right to arbitrate this particular grievance shall be considered thereafter waived. The fees and expenses of the arbitrator selected shall be paid by the party losing subject arbitration.

## ARTICLE XVII

### STRIKES AND LOCKOUTS

It is agreed that there shall be no suspension or slowdown of work by the employees or lockout by Employer during the period of this Agreement, or during the negotiations or any extension thereof.

It shall not be a violation of this Agreement for an employee to refuse to enter or work upon the premises of any Employer, if the employees of such Employer are engaged in strike ratified or approved by representatives of such employees and sanctioned by the Teamsters Joint Council #42 and notification has been given to the Employer.

It shall not be a violation of this Agreement for the employees covered hereunder to refuse to cross a picket line and perform work in any instance where the picket line has been authorized by the Teamsters Joint Council #42. If an employee chooses not to cross a picket line, the employee will not be paid. If such refusal extends beyond seven (7) calendar days in addition to not being paid, the employer will discontinue company paid benefits until the employee returns to work.

The Company has sole discretion to discipline employees for engaging in unauthorized activities, up to and including discharge, which discipline by the Company shall not be the subject to the grievance and arbitration procedure.

## ARTICLE XVIII

### MEMBERSHIP MAINTENANCE AND UNION DUES

A.    The Company will require, as a condition of employment, continued membership in the Union by each employee who is a member of the Union on the 31st day after date of this Agreement, or the 31st day after his initial employment, whichever is later, or who shall thereafter become a member of the Union, provided however, that any employee may cancel membership in the Union during the thirty (30) day period prior to expiration of this Agreement. "Membership" as used herein shall mean only the obligation to pay periodic dues and initiation fees.

B.    Upon receipt of a written request from an employee covered by the Agreement, the Employer shall cooperate with Union by deducting from the wages due said employee all regular monthly dues and/or initiation fees as fixed by the Local Union, and shall continue to make such deductions until receipt of written instructions to the contrary from said employee or until transfer of the employee out of the bargaining unit. Amounts deducted by the Employer shall be paid as designated by the employee. If an employee whose dues were being deducted immediately prior to a transfer out of the bargaining unit subsequently is transferred back into the unit, dues deductions from his wages will be started again automatically unless he has been out of the bargaining unit in excess of one hundred eighty (180) days of a new Agreement has been executed during the period he was outside of the bargaining unit, in either of which cases a new Union dues deduction authorization slip will be required before deductions can be made.

## ARTICLE XIX

### NONDISCRIMINATION

The parties agree that this Agreement shall be applied equally to all employees without regard to race, color, sex, religion, age, disability, national origin, veteran status, military status, sexual orientation, gender identity or any other characteristic protected by law.

The use of the masculine gender in the description of job classifications and any other provision of this Agreement shall not be deemed to indicate any distinction based on sex. Such uses of a masculine gender shall be deemed to include the feminine gender wherever it is found.

## ARTICLE XX

### WORKPLACE PERFORMANCE DEVELOPMENT

A hearing between the employee covered by this contract and company management will be held to discuss the facts relating to incidents subject to disciplinary action. The employee has the right to ask a Shop Steward to attend the meeting. Should the employee fail to attend or waive his/her rights to the hearing, disciplinary action may be imposed.

Regarding incidents subject to disciplinary action, the Company will conduct an investigation, hold a hearing, and issue corrective action if deemed necessary within 21 days. All drivers will report all traffic citations issued while in Company vehicles or that result in a suspended driver's license, no later than the end of the employee's next scheduled shift. When the Company becomes aware of the citation, the Company will refrain from any disciplinary action until final disposition of said citation. The Company will have twenty one (21) days to discipline after it becomes aware of the final disposition, except for vehicle accidents which will be conducted within 45 days. After these timeframes, the Company waives the right to discipline the employee.

The Company and the Union recognize the Workplace Performance Development (WPD) plan as a means of addressing disciplinary matters.

## ARTICLE XXI

### D.R.I.V.E: DEMOCRATIC-REPUBLICAN-INDEPENDENT-VOTER-EDUCATION

The Employer agrees to deduct from the paychecks of all employees covered by this Agreement voluntary contributions to D.R.I.V.E. D.R.I.V.E. shall notify the Employer of the amount designated by each contributing employee that is to be deducted from his/her paycheck on a bi-weekly basis for all weeks worked. The phrase "for weeks worked" excludes any week other than a week an employee received pay. The Employer shall transmit to D.R.I.V.E. National Headquarters on a monthly basis, in one check, the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employees' social security number and the amount deducted from the employees' paycheck.

13

The International Brotherhood of Teamsters shall reimburse the Employer annually for the Employers' actual cost for the expenses incurred in administratating the bi-weekly payroll deduction plan.

It is agreed by the parties that employees' voluntarily contributing to D.R.I.V.E shall maintain such deduction for a minimum periods of twenty-six (26) pay periods and there after may notify the Company and Union in writing of the date of cancellation of said deduction after said twenty-six (26) pay periods.

**Indemnification**
The Union hereby indemnifies and defends the Employer and holds it harmless against any and all suits, claims, demands and liabilities that may arise out of, or reason of, any action that shall be taken by the Employer for the purpose of complying with the foregoing provisions of this Article, or in reliance on any list or certificate which shall have been furnished to the Employer under such provisions.

## ARTICLE XXI

This Agreement shall become effective as of March 1, 2009, and extend to and include March 1, 2012, and shall continue from year to year thereafter unless either party hereto shall give written notice to the other of its desire to have the same amended, modified or terminated.  Such notice must be given in writing sixty (60) days prior to March 1, 2012 or sixty (60) days prior to any subsequent anniversary date of the Agreement.

TEAMSTERS                          BP PRODUCTS
LOCAL 986                          NORTH AMERICA, INC

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

## APPENDIX "A"

### WAGE RATES

| Classification | 3-1-09 | 3-1-10 | 3-1-11 |
|---|---|---|---|
| Transport Drivers | | | |
| After 24 months | 28.00 | 29.00 | 30.00 |
| After 12 months | 27.00 | 28.00 | 29.00 |
| After 6 months | 26.00 | 27.00 | 28.00 |
| Start* | 25.00 | 26.00 | 27.00 |

*Employees who enter the classification of Transport Driver with previous driving experience of a similar nature may be started at an hourly wage rate above the minimum to give recognition to such experience.

In the event the Company assigns a member of the bargaining unit to train another person in vehicle and delivery operation such employee shall be paid a premium of $.75 for each hour that he performs such training.

# SHORT-TERM DISABILITY (STD) PLAN
### BP PRODUCTS NORTH AMERICA AND TEAMSTERS LOCAL 986

BP's Short-Term Disability (STD) Plan provides income protection for employees who are ill or injured and unable to work. Generally, there is a two-day waiting period before STD benefits begin. STD benefits start on the third day of absence and the first and second days of any non-work-related illness or injury are unpaid.

However, the following is an exception to the two-day waiting period:

- The two-day waiting period will be waived for the first two (2) days an employee is absent in a calendar year due to a non-work-related illness or injury. The waiting period will be applied to all other absences resulting from a non-work-related illness or injury.
- If an employee is hospitalized or has non-elective outpatient surgery, the first and second days are paid provided the employee submits proof.
- If an employee is unable to work due to a work-related illness or injury, STD benefits will be paid beginning with the first day of absence from work.

BP administers the STD Plan and pays the full cost of STD coverage.

Unlike the other plans described in the Employee Benefits Handbook, the STD Plan is not governed by the Employee Retirement Income Security Act of 1974 (ERISA). Therefore, the following sections of "Other Information/ERISA" do not apply to the STD Plan:

- "What Your Rights Are Under ERISA"; and
- "BP Benefit Plans – ERISA Plan Information."

**Who Is Eligible**
Full-time Drivers working in the US Fuels-Logistics Operating Unit are eligible for the (STD) Plan.

**Who Is Not Eligible**
Employees are **not** eligible to participate in the STD Plan if they are:
- a non-resident alien, even if he/she is on the U.S. dollar payroll;

**Your STD Benefit Schedule**
The table below shows the schedule for **non-work-related** Short-Term Disability (STD) benefits, based on years of credited service.

| Years of Credited Service | STD Benefit Schedule | |
| --- | --- | --- |
| | 100% of Base Pay | 50% of Base Pay |
| First day of hire but less than 6 | 6 weeks | 6 weeks |
| At least 6 but less than 7 | 7 weeks | 7 weeks |
| 7 but less than 8 | 8 weeks | 8 weeks |
| 8 but less than 9 | 9 weeks | 9 weeks |
| 9 but less than 10 | 10 weeks | 10 weeks |
| 10 but less than 11 | 12 weeks | 10 weeks |
| 11 or more | 14 weeks | 12 weeks |

Once STD benefits have been exhausted, the employee must cross into a new calendar year *and* have returned to active duty for at least three months without an absence for a health condition to be eligible for a new set of benefits.

* Employees who work 40-hour weeks on an alternative schedule, such as a 4/10 (4 days at 10 hours per day) work week, are eligible for the same number of weeks as employees who work traditional schedules; hours are based on the normal number of hours an employee is scheduled to work each day.

If it is unclear whether an employee's illness or injury is work-related, STD benefits will first be paid according to the non-work-related schedule. If it is later determined that the illness or injury **is** work-related, the employee will receive work-related STD benefits reduced by the amount of non-work-related STD benefits already received, retroactive to the beginning of STD benefit payments.

When a single illness or injury lasts longer than six months, an employee may be eligible for benefits under the Long-Term Disability (LTD) Plan.

**How to Enroll**
If an employee is eligible for the Short-Term Disability (STD) Plan their coverage begins on their first day of employment.

**What Coverage Costs**
BP pays the full cost of Short-Term Disability (STD) coverage.

**How the Plan Works**
Under the Short-Term Disability (STD) Plan, employees are eligible for benefits if ill or injured and unable to work. STD benefits start on the third day of absence except when the two-day waiting period is waived as defined elsewhere in the plan document.

The percentage of base pay paid as STD benefit will depend on whether an employee's illness or injury is work-related. The same illness or injury cannot be both work-related and non-work-related.

**Initiating Benefits**
Under the Short-Term Disability (STD) Plan, if an employee becomes ill or are injured while at work, he/she must notify their supervisor immediately. If the illness or injury occurs while away from work, the employee must call his/her supervisor as soon as possible and let him/her know how long they think they will be unable to report to work.

> Certain absences may qualify for Family Medical Leave which would run concurrent with STD benefits.

The requirements to receive STD benefits include:
- medical documentation, including paperwork required by the Family Medical Leave Act (FMLA), that supports the employee's claim for STD benefits;
- if the Company questions the validity of the medical certification, it has the right to request a second opinion. If the first and second opinions differ, the Company may require a third opinion, which will be final and binding. The third and final opinion is by a health care provider jointly selected by the Company and the employee and paid for solely by the Company.
- employee's acceptance of a light-duty assignment that meets medical restrictions;

- seeking and adhering to medical advice or treatment that is recommended by a competent medical authority; and
- attendance at all scheduled appointments with company-approved doctors, including a return-to-work physical.

## Calculating STD Benefits

Short-Term Disability (STD) benefits depend on:

- base pay;
- years of credited service with the company; and
- whether the illness or injury is work-related.

For each **non-work-related** illness or injury, STD benefits will equal 100% of an employee's base pay for an initial period, then 50% of base pay for an additional period, based on the employee's years of credited service. The maximum total benefit period is up to 26 weeks.

## Holiday Pay

If a scheduled company holiday occurs while an employee is receiving STD benefits and the employee receives STD benefits for both regularly scheduled workdays on either side of the holiday, he/she will receive STD benefits for the holiday (not holiday pay). If he/she works, or choose to schedule vacation or a personal choice holiday, on either one of the regularly scheduled workdays, he/she will receive holiday pay for the scheduled holiday.

## Tax Considerations

Because BP pays the full cost of Short-Term Disability (STD) coverage, STD benefit payments are considered taxable income. Consequently, an employee's normal authorized and required tax and other payroll deductions, including Social Security and Medicare, will be withheld from STD benefit payments.

## Offsetting Benefits

Under the Short-Term Disability (STD) Plan, if an employee receives any disability benefits from other sources, such Social Security or a state disability plan, STD benefits will be reduced so that the **total** benefit does not exceed the amount that would have been received under the STD Plan alone.

For California employees, the STD benefit will be offset by other disability benefits to the extent that it does not exceed 100% of the employee's base pay.

## When Benefits Are Paid

Short-Term disability (STD) benefits are paid via regular paychecks and would begin on the third regularly scheduled workday that the employee is unable to work due to a non-work-related illness or injury except when the two-day waiting period is waived as defined elsewhere in this plan document.

Employees on STD will be paid regular STD benefits when the company requires a visit to the company doctor. If the doctor's appointment is on a non-scheduled work day, the employee will receive five (5) hours of straight time call-out pay.

## When Benefits Are Not Paid

Short-Term disability (STD) benefits will not be paid for any illness or injury resulting from:

- work for another employer, including self-employment;
- willful intent to hurt oneself or another person;

- commission of a crime;
- intoxication or improper use of drugs (excluding any period during which an employee is participating in an approved rehabilitation program for substance abuse); or
- participation in an act of war or a riot, unless the employee is an innocent bystander.

In addition, employees are not eligible to receive STD benefits while on:

- vacation;
- a leave of absence other than a family medical leave;
- suspension; or
- layoff.

**When Coverage Ends**
Short-Term Disability (STD) coverage ends on the earliest of the following dates:

- the date the employee becomes ineligible because  he/she is no longer an eligible employee or
- the date employment ends for any reason

STD benefits stop when:

- LTD benefits begin (even if an employee has not used all available STD benefits);
- the employee is no longer disabled;
- when the employee fails to provide required medical documentation, including paperwork required by the Family Medical Leave Act (FMLA), that supports the claim for STD benefits;
- the employee fails to accept a light-duty assignment that meets  medical restrictions;
- the employee fails to obtain and follow medical advice or treatment that is recommended by a competent medical authority; or
- the employee fails to keep scheduled appointments with company-approved doctors, including a return-to-work physical.

**How to Continue Coverage**
Short-Term Disability (STD) coverage terminates if your BP employment ends for any reason.

**How to Convert Coverage**
Short-Term Disability (STD) coverage cannot be converted to an individual policy.

**When the Plan Changes or Ends**
BP will maintain for the life of this agreement this STD plan.

# U.S. Fuels-Logistics
# Workplace Performance Development Policy
## BP PRODUCTS NORTH AMERICA AND TEAMSTERS LOCAL 986



## Introduction

### Purpose

- Provide detailed procedures and explanations regarding coaching, formal discipline, decision making leave, and termination to aid in positive, fair, and consistent administration and enforcement of U.S.Fuels-Logistics Standards and Rules.
- Provide specific guidelines for attendance, performance, and personal conduct.
- Enhance and maintain relationships with employees and to encourage them to assist the Company in moving forward to outstanding performance.

### Responsibility

It is the responsibility of all U.S. Fuels-Logistics Company employees to hold themselves accountable to utilizing Workplace Performance Development (WPD) procedures and performance guidelines to build superior performance and to assist in resolving issues quickly, maturely, and permanently.

## Employee Conduct Expectations

The orderly, safe, and efficient operation of the U.S. Fuels Logistics Operating Unit requires that employees perform their job satisfactorily and conduct themselves properly. It is also incumbent upon all employees to protect the Company's reputation and property.

An employee who fails to maintain the proper standards of conduct or job performance shall be subject to disciplinary action or termination as stated in the *Workplace Performance Development* document. Since it is impossible to cover all eventualities in a set of rules, these are not all-inclusive and shall not be considered limiting with regard to the application of disciplinary action. These performance expectations do not constitute a contract. The Company reserves the right to make employment or disciplinary decisions at its sole discretion.

U.S. Fuels-Logistics employees are expected to:

- Perform their assigned duties in a safe and prudent manner remaining at all times attentive and alert.
- Promptly report personal injuries, vehicular or environmental accidents, and property damage to their Supervisor.
- Comply with safety regulations and instructions.
- Be knowledgeable of and follow all applicable environmental practices and procedures to ensure full compliance with environmental regulations.
- Practice good housekeeping and assist in the maintenance of safe working conditions on Company and customer property.
- Meet standards or goals set for their jobs while maintaining established quality and safety levels.
- Be at their appointed work places at the designated starting time and remain at their work places performing their jobs until their designated stopping time or until their assigned duties are completed.
- Keep accurate Company records.
- Use property, resources, information, and funds of the Company and of employees, vendors, or contractors only in the best interests of the Company.
- To not report to work under the influence of or in the possession of any intoxicating beverage or illegal drug.
- Treat all fellow employees with respect and cooperation. Fighting, harassment, threatening, or loud abusive language or actions towards fellow employees, contractors, vendors or the general public is prohibited.
- Use parking areas as designated.
- Smoke in authorized areas only.
- Abide by all local, state and federal laws while on Company property or acting as a Company representative.
- Follow established Company policies on *Equal Employment Opportunity, Non-Discrimination and Non-Harassment*
- Follow direction as given by supervision.
- Cooperate and give accurate information during Company investigations.
- Notify the Company of changes of home address and telephone number.
- Not possess or transport firearms, explosives, or any other weapon on Company property or while on Company business.
- Use computers for business use only and only with Company authorized software.
- Not engage in any form of dishonesty.
- Not accept inappropriate gifts from contractors or vendors.

# Principles and Procedures of WPD

## Coaching

BP takes pride in recognizing each employee as an important member of its team.  As team members, employees can expect their Supervisors to frequently coach them in order to enhance or to encourage their contributions to the team's performance.  Thus, Supervisors may coach employees to sharpen their skills or to learn new skills appropriate to their evolving job assignments.

**Coaching for Problem Solving**:

When employees have not responded to coaching, coaching for problem solving is the expected method of Supervisors to informally discuss concerns with employees.

The objective is to help employees recognize when their performance is inconsistent with expectations and to encourage a problem solving approach to developing solutions.  Every effort should be made by employee and Supervisor to resolve issues at this level.  This form of coaching is corrective in nature and not considered formal discipline.  This form of coaching may be a prelude to formal discipline; but it is not, however, a prerequisite.

## Formal Discipline

Formal discipline results when coaching has failed to produce the required improvement in performance or when the severity level of the situation or the infraction warrants it.  Formal discipline respects the dignity of the individual while formally holding employees accountable for their failure or inability to do their jobs properly.

The formal disciplinary process consists of three steps of discipline:
  A.  Written Warning
  B.  Final Written Warning
  C.  Decision Making Leave

The appropriate steps in a given situation depend on the seriousness of the problem and the employee's performance history.  Although every attempt should be made by management to operate within the parameters of these guidelines, the Company retains the right to determine levels of discipline.

## Steps of Formal Discipline

### Written Warning

The Written Warning may be the first step of the formal disciplinary action process.  It should be used when a Supervisor determines that coaching has not produced the desired results or when an employee's performance infraction justifies a written warning as the first appropriate form of corrective action.  Conditions to implement a Written Warning are:

- The Supervisor will conduct a formal hearing with the employee, during which they will review the Company standard and the employee's failure to meet that standard.  If any previous commitments were made by the employee to correct the problem, they should also be discussed.  The Supervisor and employee should discuss specifically what must be done in order for him/her to meet expectations.

22

- The event and actions should be documented and placed in the employee's file.
- Written Warnings remain active for 12 months from the date of the hearing.
- The employee will be notified that this is step one of the formal discipline process.

**Final Written Warning**

The Final Written Warning may be the next step in the formal disciplinary process.  A Final Written Warning may be initiated when a Supervisor determines that an employee:

1. Fails to demonstrate the necessary improvement during the time frame that the Written Warning is active or
2. When employee's performance infraction justifies a Final Written Warning as the appropriate first step in the absence of prior formal disciplinary action or.
3. Employee has additional infractions and violations under the WPD.

Conditions for use of Final Written Warnings are:

- During the formal hearing, the Supervisor will meet with the employee to discuss the Final Written Warning.  During the formal hearing, the Supervisor will review the specific expectations agreed upon by management and discuss a plan with the employee to meet those expectations.  The Final Written Warning may be issued following the hearing.
- The event and actions should be documented and placed in the employee's file.
- Final Written Warnings will remain active for 24 months.

**Decision Making Leave**

The Decision Making Leave (DML) may be the next step in the formal disciplinary process.  Human Resources is to be consulted when a DML is under consideration.

A DML may occur when a Supervisor determines that:

1. Employee fails to demonstrate the necessary improvement during the time frame that the Final Written Warning is active.
2. Employee has additional infraction and violation under the WPD.
3. Employee's performance infraction justifies such discipline as first level of formal discipline.

Conditions for use of DML are:

1. The Supervisor will meet with the employee to issue the DML.  During the hearing the employee's overall work record is reviewed.  At the conclusion the employee is given a scheduled day off work, with pay, to decide whether or not he or she will commit to meeting BP U.S. Fuels-Logistics' performance standards.  The commitment is a total commitment; i.e., to comply with Company work rules and standards in all categories.  A serious infraction in any of the categories during the active period of the DML will result in immediate termination of employment.
2. The event and actions should be documented and placed in the employee's file.
3. DMLs remain active for 24 months from the day the employee returns to work following the DML.

We want each employee having a performance problem to have the opportunity to make a real choice and commitment to change and remain with BP. Therefore, during the time away from

work and prior to returning to work, the employee will be required to draft a letter addressing the following 5 thoughtful questions:

1. Why do you want to continue working for BP and why is working for BP important to you?
2. What steps will you take to improve your behavior and performance as you reflect on your specific disciplinary problem?
3. What can BP expect from you as an employee?
4. How can BP improve communication between you and your supervisor?
5. What can BP do to help you perform better and more efficiently?

Upon the employee's return to work, he/she should share this letter with his/her supervisor and discuss his/her commitment to improved performance.

## Disciplinary Levels

Formal Disciplinary action can be initiated for an employee for various reasons.  Employees may enter the program at different levels depending upon the seriousness of the situation, infraction and responsiveness of the employee to the situation.

Each infraction will be classified with the entry discipline level.   This is a guideline and each infraction will be handled on a case-by-case basis.  Existing active discipline will be reviewed to help determine actual discipline level.  The classifications and appropriate entry level are:

| Infraction | Suggested Entry Discipline Level |
|---|---|
| Minor | Written Warning |
| Serious | Final Written Warning |
| Major | Decision Making Leave |

## Infraction Categories/ Entry Disciplinary Levels
**(All performance infractions are subject to investigation)**

| Type          Issues | Severity |
|---|---|

*Safety and Security*
| | |
|---|---|
| • Preventable accidents | Minor-Major |
| • Product contamination | Minor-Major |
| • Preventable product spill | Minor-Major |
| • Allowing unauthorized visitors in Company vehicles | Termination |
| • Allowing unauthorized visitors on Company property | Minor - Termination |
| • Aggressive driving | Minor - Serious |
| • Reckless Driving | Serious – Termination |
| • Cell Phone usage in a company vehicle not parked | Major – Termination |
| • Smoking in unauthorized hazardous areas or transport units | Termination |

24

| | |
|---|---|
| • Failure to perform appropriate pretrip, post trip and pre rack entry inspection. | Minor |
| • Violation of rack procedures | Minor – serious |
| • Failure to use vapor recovery | Termination |
| • Possession of firearms on Company property or while on Company business | Termination |
| • Physical abuse or assault on any individual while on duty or on Company property | Termination |
| • Circumvention of the safety systems | Major - Termination |
| • Unattended transport while loading or unloading | Major - Termination |
| • Violation of safe work practices resulting in a serious accident and/or injury while on duty | Major - Termination |
| • Failure to wear PPE where required | Minor - Serious |

| **Type** | **Issues** | **Severity** |
|---|---|---|

*Regulatory*
| | |
|---|---|
| • Operation of Company vehicles in violation of federal, state, and local laws | Minor-Major |
| • Operation of any Company vehicle in violation of Company rules and regulations | Serious- Major |
| • Failure to meet the minimum requirements for safe driving under paragraph 391.25 of the Motor Carriers Safety Regulations issued by the DOT | Major |
| • Violation of any federal, state, or local law while on Company property or business | Serious - Termination |
| • Violations of Government Regulation Compliance | Serious – Termination |
| • Failure to maintain a valid CDL and required endorsements for any reason except for approved health related issues or approved background check delays | Termination |

*Insubordination / Harassment*
| | |
|---|---|
| • Refusal to perform assigned work | Termination |
| • Use of profane, offensive, or abusive language | Serious - Termination |
| • Uses of ethnic, racial, sexual, or religious slurs or demonstration of prejudicial or harassing behavior | Serious -Termination |
| • Posting, circulating or distributing inappropriate, slanderous, profane, offensive or harassing materials | Minor – Major |

*Conduct/Performance*
| | |
|---|---|
| • Failure to wear required Company uniforms | Minor |
| • Failure to maintain a professional image in hygiene and appearance | Minor |
| • Failure to attend mandatory safety meetings | Minor |
| • Failure to keep accurate paperwork | Minor |
| • Failure to meet productivity standards ** | Minor |
| • Failure to meet deadlines | Minor |
| • Falsification of record, report or any other facts | Major – Termination |
| • Failure to report tickets, violations, citations or | Minor – serious |

incidents

| Type | Issues | Severity |
|------|--------|----------|
| | Inappropriate use of breaks | Minor |
| | Failure to perform or complete work as normally required | Minor |
| | Any form of proven dishonesty | Major - Termination |
| | Engaging in theft, misappropriation, obtaining by fraud or stealing | Termination |
| | Demonstrating behavior that causes embarrassment to the Company at any time during employment | Serious - Termination |
| | Willful destruction of Company property | Termination |
| | Failure to report an accident, product spill, product contamination or injury | Major - Termination |
| | Provoking customer complaints | Minor - Serious |
| | Failure to comply with Standard Operating Procedures | Minor - Termination |
| | Unauthorized/inappropriate use of Company assets | Serious - Termination |
| | Unauthorized absence | Minor |
| | Failure to give proper notice of absence | Minor |

| Type | Issues | Severity |
|------|--------|----------|

*Drugs and Alcohol*

| | Under the influence of intoxicating alcohol or drugs; refusal to submit for testing shall establish a presumption of being under the influence of intoxicating alcohol or drugs | Termination |
| | Possession on the individual of controlled substances and/or drugs or intoxicating beverages while on duty or on Company property excluding prescribed medication in employee name | Termination |

## Deactivation

At the expiration of the appropriate time period (Written Warning: 12 months; Final Written Warning: 24 months; DML: 24 months) disciplinary actions deactivate.

Extended absences (paid or unpaid) will temporarily discontinue the active period for any of the formal steps of discipline until the employee returns to work. When an employee returns the time for calculating the active period for the formal step of discipline will be extended to include the time remaining for the outstanding disciplinary action.

## Repeat Violations

An employee who has an active disciplinary action in place and has another infraction during that time frame the disciplinary action for the new infraction will be escalated to the next level.

The following guidelines will be used:
- No more than one active Decision Making Leave may be issued.
- No more than one active Final Written Warning may be issued.
- No more than one active Written Warning may be issued.

26

## Termination

Termination is not a step in formal discipline.  However, the Company reserves the right to disregard the three levels of formal discipline and to discharge an employee for willful disregard of Company policy, of the conditions of employment, or of proper employee conduct.

Human Resources is to be consulted when termination is under consideration.  Human Resources approval is required prior to proceeding with any termination.
 Termination is the result of an employee's refusal or inability to meet the Company's standards of employment.  It will occur when an employee fails to show the required improvement during the active period of a DML or when the employee commits such a serious offense that progression through the formal levels of discipline is not warranted.   It will also occur if the employee has an additional infraction, violation or performance issue while on DML.

## ** Productivity

Coaching/driver trainer ride-alongs will be utilized to help drivers that are not meeting productivity standards of at least 85%.

Productivity will follow the same, but separate disciplinary progression, but there will be no termination for not meeting the minimum productivity standard.  After DML, employees whose productivity remains below the standard, will progress to a four (4) day suspension without pay.  Productivity will be assessed quarterly.

**Intentionally Left Blank**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV11- 4421 PA (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division** | **[ ] Southern Division** | **[ ] Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**Intentionally Left Blank**

COPY

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| JOHN MUNIZ | BP PRODUCTS NORTH AMERICA INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| ADAM REISNER (SBN 204351)<br>TESSA A. KING (SBN 251408)<br>REISNER & KING LLP<br>14724 Ventura Blvd., Suite 510<br>Sherman Oaks, California 91403<br>Tel: (818) 981-0901; Fax: (818) 981-0902 | JON D. MEER (SBN 144389)<br>TIMOTHY L. HIX (SBN 184372)<br>SIMON L. YANG (SBN 260286)<br>SEYFARTH SHAW LLP<br>2029 Century Park East, Suite 3500<br>Los Angeles, California 90067-2031<br>Tel: (310) 277-7200; Fax: (310) 201-52190 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No     ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Diversity, 28 USC section 1332. Wrongful termination and retaliation.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☒ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI 405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

## CV11-4421

| FOR OFFICE USE ONLY:   Case Number: |
|---|

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ No   ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | TEXAS |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.

Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date  May 23, 2011

Simon L. Yang

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com